## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT
1030 15th Street NW, B255, Washington, DC 20005,

      Plaintiff,

   - versus -


DONALD J. TRUMP, in his official capacity as PRESIDENT
OF THE UNITED STATES
1600 Pennsylvania Ave NW, Washington, DC 20500

JARED KUSHNER, in his official capacity as SENIOR
ADVISOR TO THE PRESIDENT OF THE UNITED STATES
1600 Pennsylvania Ave NW, Washington, DC 20500

and

EXECUTIVE OFFICE OF THE PRESIDENT
1600 Pennsylvania Ave NW, Washington, DC 20500,

      Defendants.

Civil Action No. _____

**COMPLAINT**

Plaintiff American Oversight alleges against Defendants as follows:

### NATURE OF THE ACTION

1.  Plaintiff American Oversight brings this suit to bring transparency to a matter of great public importance: the operations of an advisory committee composed of both federal and non-governmental individuals that President Donald J. Trump has convened in order to provide him with advice and recommendations regarding when and how to exercise his broad authority to grant pardons and executive clemency.  This is a matter of significant public concern.  The pardon power can be used to right an injustice in our criminal justice system, and it

11672657

can be used to provide benefits to a president's family, friends or political supporters.[1]

2.      Unlike virtually any other exercise of executive authority, the power to grant pardons and sentence commutations is largely, if not entirely, unreviewable by the courts and by Congress.  Whether the president's pardon power has been used wisely or poorly will be judged as part of the political process—specifically, by registered voters when they decide whether to vote for a particular candidate or political party.  In order for voters to have sufficient information to judge whether the pardon power has been wisely exercised, it is important for voters to understand the process that led to the president's actions.  This lawsuit seeks to provide the public with information about the particular mechanism used by President Trump to receive advice and recommendations regarding the exercise of his power to grant executive clemency.

3.      In or about late 2019, President Trump established an advisory committee (the "Clemency Task Force") to advise him on the use of his clemency power.  The committee is led by a senior advisor to the President, Jared Kushner.  Its members reportedly include at least two other White House officials.  The Clemency Task Force also includes individuals from outside the government, including criminal justice advocate Alice Marie Johnson.  This is different from the traditional process in which the pardon attorney within the Department of Justice has played a leading role in reviewing and approving the decision to grant pardons.

4.      Upon information and belief, the Clemency Task Force advised President Trump on his executive clemency decisions that were announced on February 18, 2020.  These decisions, which attracted substantial public comment, included the grant of full pardons to individuals such as Michael Milken, a financier convicted of securities fraud; David Safavian, a former government official convicted on charges of obstruction of justice and making false

---

[1] The exercise of the President's pardon power has been a recurring bipartisan issue, giving rise to disputes following the pardons of, *inter alia*, President Nixon, Vietnam War protesters, the Iran Contra defendants, financier Mark Rich, and Scooter Libby.

statements in connection with a federal investigation; and Angela Stanton, an individual convicted on charges related to her role in a stolen-vehicle ring.  The February 18 announcement also revealed the President's decision to commute the sentences of individuals including former Illinois Governor Rod Blagojevich, who was sentenced to 14 years in prison on corruption-related charges for offering an appointment to the United States Senate in exchange for campaign contributions; and Judith Negron, who was sentenced to 35 years in prison for her role in a healthcare fraud scheme perpetrated on the federal government.

5.      Though the Clemency Task Force has been meeting for at least several months and, upon information and belief, made recommendations that were instrumental in President Trump's recent decisions with respect to executive clemency, little is known about it.  Its membership, activities, and advice have all been shielded from the public.

6.      Federal law does not permit the President to establish or utilize a secret advisory committee like the Clemency Task Force, which is composed of executive branch officials and private citizens.  The Federal Advisory Committee Act, ("FACA"), 5 U.S.C. app. 2 §§ 1-16, requires an advisory committee like the Clemency Task Force to file a charter that defines its objectives, duties, and other information before it first meets.  *Id.* § 9(c).  All advisory committee meetings must be open to the public and detailed minutes of each meeting must be published.  *Id.* §§ 10(a), 10(c).  All documents made available to or prepared for or by the advisory committee must also be made public.  *Id.* § 10(b).

7.      None of these steps have been taken with respect to the Clemency Task Force.  Defendants have violated FACA by convening meetings of the Clemency Task Force without first filing a charter and by failing to abide by FACA's public access and disclosure requirements.  This lawsuit seeks to hold the government to its obligations under FACA, provide the transparency the law requires, and to disclose to the public the documents to which the public

is entitled, so that the public may better understand the decision-making process used by

President Trump in his executive clemency decisions of the past and also in the future.

## THE PARTIES

8.      Plaintiff American Oversight is a nonpartisan non-profit section 501(c)(3)

organization primarily engaged in disseminating information to the public.  American Oversight

is committed to promoting transparency in government, educating the public about government

activities, and ensuring the accountability of government officials.  Through research and

Freedom of Information Act requests, American Oversight uses the information it gathers, and

its analysis of that information, to educate the public about the activities and operations of the

federal government through reports, published analyses, press releases, and other media.  The

organization is incorporated under the laws of the District of Columbia.

9.      Defendant Donald J. Trump is the President of the United States.  Upon

information and belief, in his official capacity as President, he has established and/or utilized the

Clemency Task Force within the meaning of FACA, 5 U.S.C. app. 2 § 3(2)(B).

10.      Defendant Jared Kushner is a Senior Advisor to the President of the

United States and the Director of the White House Office of American Innovation (the "Office of

American Innovation"), which is part of the Executive Office of the President.  Upon

information and belief, in his capacity as a senior advisor to the President and official within the

Executive Office of the President, he is the *de facto* Designated Federal Officer and Chair of the

Clemency Task Force.

11.      Defendant Executive Office of the President ("EOP") is a federal agency

within the meaning of FACA, 5 U.S.C. app. 2 § 3(3) and the Administrative Procedure Act (the

"APA"), 5 U.S.C. § 701.  Upon information and belief, the Commission's electronic records are

kept on the Executive Office of the President's computer network.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

13.     The Court may award declaratory and injunctive relief under the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the APA, 5 U.S.C. § 706, and may enter

writs of mandamus under the Mandamus and Venue Act, 28 U.S.C. § 1361.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and

1391(e)(1) because Defendants are United States agencies or officers sued in their official

capacities and a substantial part of the events or omissions giving rise to this claim occurred in

this District.

## FACTUAL BACKGROUND

### I.      Statutory and Regulatory Framework

15.     Congress passed FACA, 5 U.S.C. app. 2 §§ 1-16, in 1972 to address

whether and to what extent advisory committees should be maintained to advise Executive

Branch officers and agencies.  5 U.S.C. app. 2 § 2(a); *Cummock v. Gore*, 180 F.3d 282, 284

(D.C. Cir. 1999).

16.     The enactment of FACA was driven by concerns over executive reliance

on secretive committees through which non-governmental actors could wield governmental

power behind closed doors and outside the public's view.  In passing this "sunshine" statute,

Congress explicitly recognized the risk that "interest groups may use their membership on such

bodies to promote their private concerns," pointing to past committees that excluded any

representatives of the public interest.  H.R. REP. NO. 92-1017 (1972), reprinted in 1972

U.S.C.C.A.N. 3491, 3496.

17.     To guard against the danger that commissions would be captured by

special interests, Congress prescribed rules for advisory committees "to control the advisory

committee process and to open to public scrutiny the manner in which government agencies obtain advice from private individuals." *National Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1072 (D.C. Cir. 1983).

18.     FACA defines an "advisory committee" as

any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is

(A) established by statute or reorganization plan, or
(B) established or utilized by the President, or
(C) established or utilized by one or more agencies,

in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes (i) any committee that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government, and (ii) any committee that is created by the National Academy of Sciences or the National Academy of Public Administration.

5 U.S.C. app. 2 § 3(2).

19.     FACA excludes from its coverage committees consisting solely of government employees. *Id.* In addition, certain other committees are excluded from FACA's reach by limited statutory exemptions, none of which apply here. *Id*. § 4.

20.     FACA requires both that an advisory committee be established and that its activities to be public. The "requirement of openness is a strong safeguard of the public interest." H.R. REP. NO. 92-1017 (1972), reprinted in 1972 U.S.C.C.A.N. 3491, 3500.

21.     To promote transparency, an advisory committee is not permitted to "meet or take any action" until it files a charter with the Administrator of the General Services Administration ("GSA") "in the case of Presidential advisory committees." 5 U.S.C. app. 2 § 9(c). The charter must contain, *inter alia*, "the committee's official designation," "the committee's objectives and the scope of its activity," "the period of time necessary for the committee to carry out its purposes," "the agency or official to whom the committee reports,"

"the estimated number and frequency of committee meetings," and "a description of the duties for which the committee is responsible." *Id.*

22.     In addition to publicizing an advisory committee's creation and purpose, FACA demands transparency in the structure, procedures and meetings of advisory committees. A "committee meeting" includes "any gathering of advisory committee members (whether in person or through electronic means) held with the approval of an agency for the purpose of deliberating on the substantive matters upon which the advisory committee provides advice or recommendations." 41 C.F.R. § 102-3.25.

23.     Under FACA, an "officer or employee of the Federal Government" must be designated to "chair or attend each meeting of each advisory committee." 5 U.S.C. app. 2 § 10(e). No meeting shall be held in the absence of the Designated Federal Officer ("DFO"). *Id.* The DFO of an advisory committee is required to, *inter alia*, "[a]pprove or call the meeting of the advisory committee," "[a]ttend the meetings," "[a]djourn any meeting when he or she determines it to be in the public interest," and "[c]hair the meeting when so directed." 41 C.F.R. § 102–3.120.

24.     FACA's meeting requirements are designed to guarantee transparency by facilitating open access to the public. "Each advisory committee meeting shall be open to the public," 5 U.S.C. app. 2 § 10 (a)(1), and held "at a reasonable time and in a manner or place reasonably accessible to the public." 41 C.F.R. § 102-3.140(a). An advisory committee must provide "timely notice" of its meetings in the Federal Register, 5 U.S.C. app. 2 § 10(a)(2), "at least 15 calendar days" in advance. 41 C.F.R. § 102-3.150. To close any part of an advisory committee meeting from the public, the DFO must justify the closure, obtain advance approval pursuant to specific procedures, and make the determination of closure available to the public. 41 C.F.R. § 102-3.155.

25.     These notice requirements are not a mere formality; they exist to ensure the representation of the public interest.  "Interested persons" must be permitted to "attend, appear before, or file statements with [the] committee, subject to such reasonable rules or regulations as the [GSA] Administrator may prescribe."  5 U.S.C. app. 2 § 10(a)(3).

26.     FACA mandates that "[d]etailed minutes of each meeting of each advisory committee shall be kept," including "a record of the persons present, [and] a complete and accurate description of matters discussed and conclusions reached."  *Id.* § 10(c).

27.     FACA further requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying."  *Id.* § 10(b); *see also id.* § 11 (requiring that "copies of transcripts of . . . advisory committee meetings" be made available "to any person").

28.      Section 10(b)'s disclosure requirement "serves to prevent the surreptitious use of advisory committees to further the interests of any special interest group."  H.R. REP. NO. 92-1017 (1972), reprinted in 1972 U.S.C.C.A.N. 3491, 3500.  It is contrary to federal law for advisory committees to work in secret or to impact government action based on consultations that are shielded from the public and from some of the advisory committee's own members.

29.     Advisory committees are affirmatively obligated to provide access to the Section 10(b) materials.  *Food Chem. News v. Dep't of Health and Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1993).

30.     Timely access to advisory committee materials is "an important element of" FACA because it "provide[s] a meaningful opportunity to comprehend fully the work undertaken by the advisory committee."  41 C.F.R. § 102-3.170.

31.     In addition to the minimum statutory requirements, advisory committees

are encouraged "to be as inclusive as possible" in terms of "post[ing] advisory committee

information and seek[ing] broader input from the public." 41 C.F.R. § 102-3.95(d).

32.     Each of the requirements of FACA is mandatory on the advisory

committee itself, the advisory committee's DFO and Chair, and the President.

**II.     President Trump Establishes The Clemency Task Force**

33.     On information and belief, in late 2019, Defendant President Trump

and/or Defendant Kushner established a working group including both federal employees and

non-governmental individuals to provide advice and recommendations on clemency and pardon

issues to the President.

34.     Specifically, this working group was created to collectively discuss, and to

provide collective advice and recommendations to Defendant President Trump, regarding

potential changes to the pardon and clemency process as well as the evaluation of particular

candidates for pardons and commutations.

35.     Plaintiff refers to this working group in this complaint as the "Clemency

Task Force."

36.     The Clemency Task Force is an advisory committee established and

utilized by Defendant President Trump and/or Defendant Kushner in the interest of obtaining

advice or recommendations for the President or one or more federal officials regarding clemency

and pardon issues.

37.     The Clemency Task Force thus qualifies as an advisory committee under

FACA.

38.     As of the filing of this complaint, no charter for the Clemency Task Force

has been filed in the Federal Register.

39.     On information and belief, President Trump designated Defendant

Kushner to lead the Clemency Task Force.

40.     On information and belief, Ja'Ron Smith is a member of the Clemency Task Force.  Mr. Smith is the Deputy Assistant to the President and Deputy Director of the Office of American Innovation.

41.     On information and belief, Pam Bondi is a member of the Clemency Task Force.  Ms. Bondi is a Special Adviser to the President and the former Attorney General of Florida.

42.     On information and belief, Alice Marie Johnson is a member of the Clemency Task Force.  Ms. Johnson is an advocate for criminal justice reform.  Prior to June 6, 2018, Ms. Johnson was serving a life sentence in federal prison.  On June 6, 2018, President Trump commuted her sentence.

43.     On information and belief, Ms. Johnson is not currently employed by the federal government or appointed to any formal government positions by the President, the Office of American Innovation, or any other agency within the federal government.

44.     On information and belief, Matthew Whitaker is a member of the Clemency Task Force.  Mr. Whitaker is the former acting Attorney General of the United States and is no longer employed by the federal government.

45.     On information and belief, Mr. Whitaker is not currently employed by the federal government or appointed to any formal government positions by the President, the Office of American Innovation, or any other agency within the federal government.

46.     On information and belief, Van Jones is a member of the Clemency Task Force.  Mr. Jones is a political commentator and a criminal justice reform advocate.

47.     On information and belief, Mr. Jones is not currently employed by the federal government or appointed to any formal government positions by the President, the Office

of American Innovation, or any other agency within the federal government.

48.     On information and belief, Brett Tolman is a member of the Clemency Task Force.  Mr. Tolman is the former United States Attorney for the District of Utah, a political commentator, and a criminal justice reform advocate.

49.     On information and belief, Mr. Tolman is not currently employed by the federal government or appointed to any formal government positions by the President, the Office of American Innovation, or any other agency within the federal government.

50.     On information and belief, Mark Holden is a member of the Clemency Task Force.  Mr. Holden is the former general counsel of Koch Industries and a criminal justice reform advocate.

51.     On information and belief, Mr. Holden is not currently employed by the federal government or appointed to any formal government positions by the President, the Office of American Innovation, or any other agency within the federal government.

52.     On information and belief, Paul Larkin is a member of the Clemency Task Force.  Mr. Larkin is a research fellow at the Heritage Foundation and a criminal justice reform advocate.

53.     On information and belief, Mr. Larkin is not currently employed by the federal government or appointed to any formal government positions by the President, the Office of American Innovation, or any other agency within the federal government.

54.     On information and belief, Marc Levin is a member of the Clemency Task Force.  Mr. Levin is the Vice President of Criminal Justice Policy at the Texas Public Policy Foundation and a criminal justice reform advocate.

55.     On information and belief, Mr. Levin is not currently employed by the federal government or appointed to any formal government positions by the President, the Office

of American Innovation, or any other agency within the federal government.

56.     On information and belief, Kevin Roberts is a member of the Clemency Task Force.  Mr. Roberts is the executive director of the Texas Public Policy Foundation and a criminal justice reform advocate.

57.     On information and belief, Mr. Roberts is not currently employed by the federal government or appointed to any formal government positions by the President, the Office of American Innovation, or any other agency within the federal government.

58.     The existence of the Clemency Task Force first came to light publicly in a February 20, 2020 story in the Washington Post.[2]

59.     There may be additional members of the Clemency Task Force.

60.     Federal regulations provide that petitions for clemency are to be submitted to the Office of the Pardon Attorney ("OPA") at the U.S. Department of Justice.  As set forth in 28 C.F.R. § 1.6, the Attorney General of the United States is obligated to "review each petition and all pertinent information developed by the investigation" and "determine whether the request for clemency is of sufficient merit to warrant favorable action by the President."  Pursuant to the authority under 28 C.F.R. § 1.9, the Attorney General has delegated this authority to the OPA.[3]  This process was established in order to ensure that the president uses his pardon power in a manner that is transparent and even-handed.

61.     On information and belief, the Clemency Task Force has reviewed, discussed, and provided advice and recommendations to the President regarding applicants for

---

[2] See Toluse Olorunnipa, Josh Dawsey and Neena Satija, *White House Assembles Team of Advisers to Guide Clemency Process as Trump Considers More Pardons*, The Washington Post, Feb. 20, 2020, available at https://www.washingtonpost.com/politics/white-house-assembles-team-of-advisers-to-guide-clemency-process-as-trump-considers-more-pardons/2020/02/19/752d04d2-532e-11ea-929a-64efa7482a77_story.html.

[3] Office of the Inspector General, *U.S. Department of Justice, Review of the Department's Clemency Initiative*, August 2018, https://oig.justice.gov/reports/2018/e1804.pdf.

pardons or commutations who submit applications directly to the Office of American Innovation, rather than (or in addition to) Department of Justice's OPA.

62.     On information and belief, the Clemency Task Force has met several times since late 2019 to develop advice and recommendations to Defendant President Trump and/or Defendant Kushner regarding reformation of the pardon and clemency process as well as the evaluation of particular candidates for pardons and commutations.

63.     On information and belief, at these meetings, members of the Clemency Task Force discussed and deliberated regarding individual candidates for pardons and clemency.

64.      On information and belief, following these meetings, the Clemency Task Force provided collective advice and recommendations to Defendant President Trump and/or Defendant Kushner regarding individual candidates for pardons and clemency.

65.      On information and belief, at these meetings, members of the Clemency Task Force discussed and deliberated regarding potential reforms to the pardon and commutation process.

66.     On information and belief, following these meetings, the Clemency Task Force provided collective advice and recommendations to Defendant President Trump and/or Defendant Kushner regarding potential reforms to the pardon and commutation process.

67.     Because the Clemency Task Force has operated in secret, the full scope of its activities, including its deliberations and any advice or recommendations provided to Defendant President Trump and/or Defendant Kushner, are unknown, except to Defendants.

68.     Publicly available information, however, reveals that, as of the date of this filing, the members of the Clemency Task Force have worked together to advise the president on a recent round of well-publicized pardons.

69.     On February 18, 2020, President Trump announced presidential

commutations or pardons for 11 individuals.[4]

70.     On information and belief, the Clemency Task Force reviewed candidates
for commutations or pardons included in the President's February 18, 2020 announcement,
before the date of the commutations and pardons.

71.     On information and belief, the Clemency Task Force discussed candidates
for commutations or pardons included in the President's February 18, 2020 announcement.

72.     On information and belief, the Clemency Task Force provided advice and
recommendations to Defendant President Trump regarding candidates for commutations or
pardons included in the President's February 18, 2020 announcement.

73.     The support of members of the Clemency Task Force for pardons or
commutations issued on February 18, 2020 is reflected in the White House press release
announcing those decisions.

74.     On information and belief, Defendant President Trump and/or Defendant
Kushner will continue to seek recommendations from the Clemency Task Force regarding
potential pardon and clemency decisions as well as potential changes to the clemency and pardon
processes.

75.     By purporting to accept its advice and recommendations and making these
decisions in consultation with the Clemency Task Force, President Trump has created the
impression that his decisions reflect the advice and recommendations of a bipartisan panel of
criminal justice experts, without influence by personal or political concern.

76.     The failure to comply with FACA, however, leaves the public with little
public information about the work of the commission, its meetings, or how its recommendations

---

[4] Press Release, The White House, *Statement from the Press Secretary Regarding Executive Grants of Clemency*, Feb. 18, 2020, https://www.whitehouse.gov/briefings-statements/statement-press-secretary-regarding-executive-grants-clemency-2/.

were formulated.

77.     On information and belief, Defendant President Trump and/or Defendant Kushner will continue to consider, and make pardon and clemency determinations reflecting, the advice and recommendations of the Clemency Task Force.

78.     On information and belief, Defendant President Trump and/or Defendant Kushner will continue to consider the advice and recommendations of the Clemency Task Force regarding reformation of the pardon and clemency process.

**III.     The Clemency Task Force is Subject to FACA**

79.     The Clemency Task Force is an advisory committee established or utilized by the President and/or by Defendant Kushner on his behalf for the purpose of obtaining collective advice or recommendations regarding clemency and pardon determinations as well as potential reforms to the pardon and commutation process.

80.     Thus, the Clemency Task Force is an "advisory committee" as defined by, and subject to the requirements of, FACA.

81.     On information and belief, members of the Clemency Task Force include at least its DFO and Chair, Defendant Kushner, as well as Mr. Smith, Ms. Bondi, Ms. Johnson, Mr. Whitaker, Mr. Jones, Mr. Tolman, Mr. Holden, Mr. Larkin, Mr. Levin and Mr. Roberts.

82.     On information and belief, the Clemency Task Force was established and is utilized by the President and/or Defendant Kushner on the President's behalf for the purpose of providing collective advice and recommendations regarding clemency and pardon determinations as well as potential reforms to the pardon and commutation process.

83.     On information and belief, the Clemency Task Force has repeatedly met to discuss potential pardons and clemency determinations and to prepare group recommendations to submit to the President.

84.     Furthermore, the Clemency Task Force has already presented such recommendations to the President, as its members have been acknowledged in public statements following the President's announcements of pardon or clemency decisions.

85.     On information and belief, the Clemency Task Force continues to meet to prepare collective recommendations to the President regarding pardons and clemency determinations.

86.     On information and belief, the Clemency Task Force has repeatedly met to discuss potential reforms to the pardon and commutation process and prepare group recommendations to submit to the President.

87.     On information and belief, the Clemency Task Force continues to meet to prepare collective recommendations to the President regarding potential reforms to the pardon and commutation process.

88.     The Clemency Task Force is not composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government.

89.     No other basis for exemption from FACA applies here.

90.     The Clemency Task Force is subject to the requirements of FACA, including but not limited to the charter, public notice and access, and disclosure requirements.

## IV.    Defendant Kushner Denied Plaintiff Records

91.     By letter dated February 20, 2020, Plaintiff American Oversight asked Defendant Kushner to provide all records prepared by or made available to members of the Clemency Task Force in connection with any meetings held by the Task Force since it was established. *See* Ex. A.

92.     American Oversight informed Defendant Kushner of FACA's requirements that advisory committees "hold their deliberations in public," "make their working

papers available for public inspection," and "have a membership that is fairly balanced in terms

of the points of view represented."  Ex. A.  In light of the failure of the Clemency Task Force to

comply with FACA's mandatory provisions, American Oversight sought "to inspect all records

prepared by or made available to task force members in connection with any meetings held by

the task force since it was established" and advised Defendant Kushner that "the task force

should not conduct any further business without complying with the public notice and access

requirements provided by FACA."  *Id.*

93.     As of the filing of this complaint, neither Defendant Kushner nor any

other member of the Trump Administration responded to the letter.

**V.     The Clemency Task Force Has Violated FACA**

94.     As of the date of this complaint, no charter has been filed for the

Clemency Task Force in the Federal Register, in violation of FACA Section 9(c).

95.     Although the Clemency Task Force has held meetings, no notice of such

meetings has been filed in the Federal Register, in violation of FACA Section 10(a).

96.     The meetings of the Clemency Task Force have not been open to the

public, nor has any determination of closure been provided to the public, in violation of FACA

Section 10(a).

97.     Defendant Kushner, the DFO and Chair of the Clemency Task Force, has

failed to comply with Plaintiff's request for documents, in violation of FACA Section 10(b).

Such disclosure is required by FACA even after the disbandment of an advisory commission.

<u>**CLAIM I**</u>

<u>**Violation of the Federal Advisory Committee Act § 9(c)**</u>

98.     American Oversight repeats and re-alleges the above allegations as if fully

set forth herein.

99.     No charter has been filed for the Clemency Task Force.

100.    FACA and its implementing regulations prohibit any action by the
Clemency Task Force until after the charter has been filed.  5 U.S.C. app. 2 § 9(c) ("No advisory
committee shall meet or take any action until an advisory committee charter has been filed."); 41
C.F.R. § 102-3.70.

101.    Any activities undertaken by the Clemency Task Force therefore violated
FACA and its implementing regulations.

102.    The Court's intervention is necessary to enforce FACA's charter
requirement.

103.    Absent declaratory and injunctive relief, Plaintiff will suffer irreparable
harm from Defendants' continued violation of FACA.

104.    Plaintiff has no adequate remedy at law.

## CLAIM II

### Violations of the Federal Advisory Committee Act § 10(a)

105.    American Oversight repeats and re-alleges the above allegations as if fully
set forth herein.

106.    The Clemency Task Force has held meetings without publishing notice of
such meetings in the Federal Register.

107.    The meetings of the Clemency Task Force have not been open to the
public so that interested parties could attend, nor has any determination of closure been provided
to the public.

108.    The Clemency Task Force's holding of meetings without providing public
notice and access violated FACA and its implementing regulations.

109.    The Court's intervention is necessary to enforce FACA's public notice and

access requirements.

110.    Absent declaratory and injunctive relief, Plaintiff will suffer irreparable harm from Defendants' continued violation of FACA.

111.    Plaintiff has no adequate remedy at law.

### CLAIM III

### Violation of the Federal Advisory Committee Act § 10(b)

112.    American Oversight repeats and re-alleges the above allegations as if fully set forth herein.

113.    Defendant Kushner, the DFO and Chair of the Clemency Task Force, has failed to comply with Plaintiff's request for disclosure of documents.

114.    The Court's intervention is necessary to enforce FACA's public disclosure requirements.

115.    Absent declaratory and injunctive relief, Plaintiff will suffer irreparable harm from Defendants' continued violation of FACA.

116.    Plaintiff has no adequate remedy at law.

### CLAIM IV

### Violation of the Administrative Procedure Act

117.    American Oversight repeats and re-alleges the above allegations as if fully set forth herein.

118.    Defendants have violated the APA by (i) failing to file a required charter; (ii) failing to provide public notice of meetings of the Clemency Task Force; (iii) failing to provide public access to such meetings; and (iv) failing to provide the requested disclosure of documents.  Therefore, under the APA, Defendants have unlawfully withheld or unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law.  *Id*. § 706(2)(A).

119.    These failures to comply with FACA's requirements constitute arbitrary and capricious agency action in violation of the APA.

120.    These failures to comply with FACA's requirements constitute "final agency action for which there is no other adequate remedy in a court," and therefore are "subject to judicial review." 5 U.S.C. § 704; *see id.* § 702.

121.    The Court's intervention is necessary to enforce the APA.

122.    Absent declaratory and injunctive relief, Plaintiff will suffer irreparable harm from Defendants' continued violation of the APA.  Defendants' failure to meet FACA's statutory requirements prevented and continue to prevent public notice and access to the activities of the Clemency Task Force.

123.    Plaintiff has no adequate remedy at law.

## CLAIM V

### Mandamus and Venue Act (28 U.S.C. § 1361)
### (in the alternative to Counts I, II, III, and IV)

124.    American Oversight repeats and re-alleges the above allegations as if fully set forth herein.

125.    In the alternative to Counts I – IV, this Court should enter a writ of mandamus compelling Defendants to comply with their clear, indisputable, non-discretionary obligations under FACA.

126.    Absent mandamus relief, Plaintiff will suffer irreparable harm from Defendants' continued violation of their obligatory duties under FACA.  Defendants' failure to meet FACA's statutory requirements prevented and continue to prevent public notice and access to the activities of the Clemency Task Force.

127.    Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, American Oversight demands judgment awarding the following

relief:

A. A declaration that the Clemency Task Force is subject to FACA and all of its requirements;

B. A declaration that Defendants violated FACA and/or the APA by failing to file a charter for the Clemency Task Force;

C. A declaration that Defendants violated FACA and/or the APA by failing to provide public notice and access to Clemency Task Force meetings;

D. A declaration that Defendants violated FACA and/or the APA by failing to provide the requested Section 10(b) documents;

E. An order that Defendants produce records responsive to Plaintiff's request without delay;

F. An order that the Clemency Task Force comply with all applicable FACA requirements, including but not limited to the charter, public notice and access, and disclosure requirements;

G. In the alternative to (A) – (F), a writ of mandamus providing the same relief; and

H. Such other relief as the Court deems just and proper.


Dated: March 12, 2020                    Respectfully submitted,

                                         By:
                                             /s/ Daniel S. Ruzumna

                                         PATTERSON BELKNAP WEBB & TYLER LLP
                                         Daniel S. Ruzumna (D.C. Bar No. 450040)
                                         Harry Sandick (*pro hac vice* application to be filed)
                                         1133 Avenue of the Americas
                                         New York, N.Y. 10036
                                         Tel:  (212) 336-2000
                                         Fax:  (212) 336-2222
                                         druzumna@pbwt.com
                                         hsandick@pbwt.com

                                         *Attorneys for Plaintiff American Oversight*