**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN OVERSIGHT,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity
as PRESIDENT OF THE UNITED STATES,
*et al.*,

Defendants.

Civil Docket No. 20-cv-00716 (RJL)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.  FACA DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION................................ 2

II.  DEFENDANTS ARE NOT SUBJECT TO THE APA. ..................................................... 4

III.  PLAINTIFF CANNOT ESTABLISH A "CLEAR AND INDISPUTABLE"
      RIGHT TO MANDAMUS AND THEREFORE THIS COURT LACKS
      MANDAMUS JURISDICTION................................................................................ 7

      A.  The Facts in the Complaint Do Not Establish Plaintiff's Mandamus
          Jurisdiction................................................................................................ 7

      B.  The Smith Declaration Confirms That Plaintiff Lacks Mandamus
          Jurisdiction.............................................................................................. 13

      C.  Plaintiff Is Not Entitled to Rule 56(d) Discovery. ................................. 16

      D.  Applying FACA to Advice About the President's Pardon Determinations
          Would Constitute Impermissible Interference With the President's Article
          II Powers. ................................................................................................ 22

CONCLUSION................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Agelli v. Sebelius,*
  Civ. A. No. DKC 13-497, 2014 WL 347630 (D. Md. Jan. 30, 2014) ...................................... 19

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ......................................................................................................... 2, 3

*Am. Hosp. Ass'n v. Burwell,*
  812 F.3d 183 (D.C. Cir. 2016) ............................................................................................. 7

*Am. Oversight, Inc. v. U.S. Dep't of Health & Human Servs.*, Civ. A.,
  No. 17-827 EGS/DAR, 2018 WL 4765145 (D.D.C. Aug. 10, 2018) ................................. 18

*\*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................................................. 8

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton,*
  997 F.2d  (D.C. Cir. 1993) ................................................................................................. 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................................................... 6, 8

*\*Byrd v. EPA,*
  174 F.3d 239 (D.C. Cir. 1999) ...................................................................................... 10, 17

*Carpenter v. Fed. Nat'l Mortg. Ass'n,*
  174 F.3d 231 (D.C. Cir. 1999) ........................................................................................... 17

*Center for Arms Control & Non-Proliferation v. Lago,*
  Civ. A. No. 05-682 (RMC), 2006 WL 3328257 (D.D.C. Nov. 15, 2016) ............................. 2

*Center for Arms Control & Non-Proliferation v. Pray,*
  531 F.3d 836 (D.C. Cir. 2008) ..................................................................................... 22, 24

*\*Cheney v. U.S. Dist. Ct.,*
  542 U.S. 367 (2004) ........................................................................................... 7, 9, 21, 23

*Citizens for Responsibility & Ethics in Washington v. Leavitt,*
  577 F. Supp. 2d 427 (D.D.C. 2008) ....................................................................... 16, 19, 22

*Citizens for Responsibility & Ethics in Wash. v. Office of Admin.,*
  566 F.3d 219 (D.C. Cir. 2009) ............................................................................................. 5

*Coal. for Underground Expansion v. Mineta,*
  333 F.3d 193 (D.C. Cir. 2003) ........................................................................................... 14

*Convertino v. U.S. Dep't of Justice*,
    684 F.3d 93 (D.C. Cir. 2012) ........................................................................ 17

*Corel Corp. v. United States*,
    165 F. Supp. 2d 12 (D.D.C. 2001) ................................................................ 20

*Ctr. for Biological Diversity v. Tidwell*,
    239 F. Supp. 3d 213  (D.D.C. 2017) .......................................................... 3, 10

*\*Democracy Forward Found. v. White House Office of Am. Innovation*,
    356 F. Supp.3d 61 (D.D.C. 2019) .................................................................. 5

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
    Civ. A. No. 17-2361 (CKK), 2020 WL 2800673 (D.D.C. May 29, 2020) ................................. 3

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*,
    No. 19-cv-02906, 2020 WL 2838568 (D.D.C. June 1, 2020).................................... 5

*Fischer v. U.S. Dep't of Justice*,
    723 F. Supp. 2d 104 (D.D.C. 2010) .............................................................. 20

*Food & Water Watch v. Trump*,
    357 F. Supp. 3d 1 (D.D.C. 2018) ........................................................... *passim*

*Freedom Watch, Inc. v. Obama*,
    807 F. Supp. 2d 28 (D.D.C. 2011) ................................................................ 24

*Freedom Watch, Inc. v. Obama*,
    930 F. Supp. 2d 98 (D.D.C. 2013) ......................................................... *passim*

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ..................................................................... 14

*Ikossi v. Dep't of Navy*,
    516 F.3d 1037 (D.C. Cir. 2008) ................................................................... 17

*\*In re Cheney*,
    406 F.3d 723 (D.C. Cir. 2005) .......................................................... 8, 9, 14, 24

*In re Cheney*,
    544 F.3d 311 (D.C. Cir. 2008) ..................................................................... 23

*In re Navy Chaplaincy*,
    850 F. Supp. 2d 86 (D.D.C. 2012) .................................................................. 6

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
    219 F. Supp. 2d 20 (D.D.C. 2002) ................................................................. 3

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   736 F. Supp. 2d 24 (D.D.C. 2010) ................................................................ 3, 11

*Kissinger v. Reporters Committee for Freedom of the Press*,
   445 U.S. 136 (1980) ............................................................................................... 5

*Manshardt v. Fed. Judicial Qualifications Comm.*,
   408 F.3d 1154 (9th Cir. 2005) ............................................................................. 3

*Meyer v. Bush*,
   981 F.2d 1288 (D.C. Cir. 1993) ........................................................................... 5

*Moseley v. King*,
   197 F. Supp. 3d 210 (D.D.C. 2016) ............................................................ 17, 18

*Nader v. Baroody*,
   396 F. Supp. 1231 (D.D.C. 1975) ..................................................................... 12

*Potter v. Toei Animation Inc.*,
   839 F. Supp. 2d 49 (D.D.C. 2012) .................................................................. 4, 9

*Public Citizen v. U.S. Dep't of Justice*,
   491 U.S. 440 (1989) ............................................................................. 21, 22, 23

*Slama v. City of Madera*, No. 1:08-cv-810 AWI GSA,
   2012 WL 1067198 (E.D. Cal. Mar. 28, 20212) ................................................ 19

*Strang v. U.S. Arms Control & Disarmament Agency*,
   864 F.2d 859 (D.C. Cir. 1989) ................................................................... 17, 19

*United States ex rel. Folliard v. Gov't Acquisitions, Inc.*,
   764 F.3d 19 (D.C. Cir. 2014) ............................................................................. 17

*VoteVets Action Fund v. U.S. Dep't of Veterans Affairs*,
   414 F. Supp. 3d 61 (D.D.C. 2019), *filing appeal*,
   No. 19-5337 (D.C. Cir. Nov. 27, 2019) ...................................................... 10, 11

*Wesberry v. United States*,
   205 F. Supp. 3d 120 (D.D.C. 2016), *denying reconsideration*,
   304 F. Supp. 2d 30 (D.D.C. 2018) ..................................................................... 14

*Wright v. Foreign Serv. Grievance Bd.*,
   503 F. Supp. 2d 163 (D.D.C. 2007) ..................................................................... 8

## STATUTES

5 U.S.C. app. 2 § 3 ...................................................................................................... 9

5 U.S.C. § 706 .............................................................................................................. 4

**RULES**

Fed. R. Civ. P. 56 ................................................................................................................. 16

**OTHER AUTHORITIES**

Dan Diamond, *How a 96-hour project helped Trump's team reverse its testing debacle*,
    Politico, May 5, 2020,
    https://www.politico.com/news/2020/05/05/coronavirus-trump-testing-partnership-23613 ...... 6

Ellen Sheng, *Facebook, Google discuss sharing smartphone data with the government to
    fight coronavirus, but there are risks*, CNBC, Mar. 19, 2020,
    https://www.cnbc.com/2020/03/19/facebook-google-could-share-smartphone-data-to-
    fight-coronavirus.html ............................................................................................................... 6

**INTRODUCTION**

The Supreme Court and the D.C. Circuit have repeatedly held that the Federal Advisory Committee Act ("FACA") must be construed narrowly, particularly against the White House, to avoid serious separation-of-powers concerns.  Here, Plaintiff has not even pled that the White House has satisfied the required elements of a FACA committee.  Were there any doubt, the White House has proffered a sworn declaration confirming that there is no such committee.

Plaintiff's opposition brief largely fails to engage with these facts or the controlling precedent it must follow.  Instead, it confirms Plaintiff's apparent ultimate objective in this case – to propound sweeping discovery against the President's most senior advisors, in order to learn about how they advise the President about his plenary Article II pardon and clemency powers, despite the fact that the Supreme Court in *Cheney* explicitly rejected precisely this type of discovery in precisely this type of situation.  This Court, consistent with binding Supreme Court precedent, should reject Plaintiff's exceptional and unwarranted demand.

But this Court need not even address discovery, because Plaintiff cannot get there.  It does not seriously dispute that FACA itself provides no private right of action, that the APA's right of action is unavailable here, and that it would therefore have to establish a "clear and indisputable" right to mandamus relief.  Moreover, as discussed in the opening brief, Plaintiff's Complaint fails even to state a claim to relief.  FACA requires that, for an advisory committee to be subject to the statute, it must have non-governmental members with a vote or a veto over the committee's collective recommendations, *and* that the President or another official have either formally established or exercised actual management or control over the committee's operations.  Plaintiff's Complaint pleads neither of these essential elements, and does not even seriously claim to do so in its opposition.  That alone is enough to dismiss the Complaint.

1

Furthermore, the White House has provided a sworn, detailed declaration by a purported "member" of the alleged "Task Force," confirming that there is no such task force.  Plaintiff claims that this Court cannot consider such a declaration at this stage, but the D.C. Circuit is clear that it can – and this court should, just like other courts in this district that have resolved *de facto* FACA claims against the White House without discovery.

And discovery is simply not warranted.  Plaintiff has failed to comply with the procedural requirements for Rule 56(d) discovery, and on the substance, it either seeks information it already has (the details of meetings and members of a "Task Force" that a sworn declaration has confirmed does not exist) or information that goes far beyond what it would be entitled to even if it succeeded on the merits of the case (the precise situation that the Supreme Court addressed in *Cheney*).

## **ARGUMENT**

## I.   **FACA DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION.**

A private right of action is a necessary element of a statutory suit, *see Alexander v. Sandoval*, 532 U.S. 275, 292-93 (2001), and because FACA itself has no private right of action, Plaintiff cannot bring suit directly under FACA.  The three claims (Claims I, II, and III) that purport to do so must be dismissed.  Mem. Supp. Defs.' Mot Dismiss, at 10-11, ECF No. 16-1 ("MTD").

Plaintiff, undaunted, nonetheless suggests that "[d]istrict courts are split on whether FACA provides a private cause of action," and that "[i]n the absence of controlling legal authority, the Court should not dismiss these claims at this stage of the proceedings."  Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss, at 5-6, ECF No. 17 ("Opp'n").  Plaintiff's claim is doubly wrong.  First, any suggestion of an intra-circuit split grievously distorts the case-law.  On its side of the ledger, Plaintiff cites a single case, *Center for Arms Control & Non-Proliferation v. Lago*, Civ. A. No. 05-682 (RMC), 2006 WL 3328257, at *4 (D.D.C. Nov. 15, 2016), where the court noted that "it

appears that the Supreme Court has essentially assumed that citizens may sue if they have been denied access to records under FACA," but did *not* decide whether there actually was a private right of action, since it dismissed the case on other grounds.[1]  *See Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213 221, n.2 (D.D.C. 2017) (noting that "[o]nly one decision by a court in the D.C. Circuit [i.e., *Lago*] has suggested otherwise since *Sandoval* [i.e., that FACA may have a private right of action]," and stating that "the issue of whether FACA provides a cause of action was irrelevant to the ultimate holding in *Lago*, which was that the relevant committee was not subject to FACA, mandating dismissal of the lawsuit, and the D.C. Circuit affirmed *Lago* on the same basis, without any discussion of whether FACA provides a cause of action.") (internal citations omitted).  On the other side of the ledger are any number of opinions from this Circuit that have "in recent years, consistently found that 'FACA does not provide for a private cause of action.'"  *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, Civ. A. No. 17-2361 (CKK), 2020 WL 2800673, at *12 (D.D.C. May 29, 2020) (collecting cases).

Those decisions are undoubtedly correct: ever since the Supreme Court's decision in *Sandoval*, which clarified the requirements for a private cause of action, courts have consistently *held* that "[b]ecause the FACA does not explicitly confer a private remedy, and because this fact alone is 'determinative,'" there is no such private right of action.  *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010) (citing *Sandoval*, 532 U.S. at 286); *see also Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 33 (D.D.C. 2002) ("Nothing in the language of FACA evidences any intent to create such a remedy.").  And Plaintiff

---

[1] In making that statement, *Lago* cited to *Manshardt v. Fed. Judicial Qualifications Comm.*, 408 F.3d 1154, 1156 n.3 (9th Cir. 2005), which noted that *Public Citizen* had "apparently assum[ed], without expressly deciding, the existence of a private right of action to enforce FACA under the extant doctrinal framework, subsequently clarified by the Court's opinion in *Alexander v. Sandoval*.").  *Lago* did not *endorse* the view that FACA has a private right of action.

is wrong to suggest that this Court should not reach this question. *See* Opp'n at 6. The existence of a private right of action is a question of law, which can, and should, be reached at the motion to dismiss stage, since it is an essential element of Plaintiff's claims.

Contrary to Plaintiff's contention, *see* Opp'n at 6, the question of what cause of action may apply is meaningful to this Court's analysis. While Plaintiff could bring an APA claim to remedy a purported FACA violation, it can *only* do that if the defendants are agencies (which they are not), and, in any event, the standard of review for APA review would be arbitrary and capricious for a claim brought under 5 U.S.C. § 706(2), and akin to mandamus for a claim brought under 5 U.S.C. § 706(1). Mandamus might theoretically provide a right to relief notwithstanding the defendants' status, but any violation must be "clear and indisputable," and there is no such violation here.

## II.   DEFENDANTS ARE NOT SUBJECT TO THE APA.

As explained in Defendants' opening brief, because none of the defendants are "agencies" within the meaning of the APA, plaintiff cannot avail itself of the APA's cause of action. *See* MTD at 11-16. And Plaintiff does not dispute—and thus may be taken to have conceded—that neither the President, nor Mr. Kushner in his capacity as Senior Advisor to the President (and thus a member of the White House Office), nor the Executive Office of the President are "agencies" for purposes of the APA. *See* Opp'n at 7-10; *see also Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012) ("In the [D.C.] Circuit, it is established that an argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.").

Rather, Plaintiff's sole argument is that the White House Office of American Innovation ("OAI")—which it concedes is a part of the White House Office—*is* an agency. To advance its position, Plaintiff cites two online articles in an effort to show that OAI "exercised substantial authority independent of the President." *See* Opp'n at 8 (referencing *Citizens for Responsibility &*

*Ethics in Wash. v. Office of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009)).  This argument is triply wrong.  First, the fact that "[i]t is undisputed that the OAI is part of the White House Office" is dispositive, regardless of that entity's operations, as the "[t]he D.C. Circuit has repeatedly interpreted *Kissinger* [*v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980)] to mean that entities within the White House Office are categorically not agencies for purposes of FOIA," and thus the APA.[2]  *Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp.3d 61, 65-66 (D.D.C. 2019); *see also id.* ("In other words, entities within the White House Office are not agencies subject to FOIA regardless of how they function.") (citing *Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993)).

Second, even if courts do apply the "substantial independent authority" test to entities within the White House Office—and they do not, *see Democracy Forward Found.*, 356 F. Supp. 3d at 65-66—Plaintiff has not pled any facts in the Complaint establishing any such independent authority.  Indeed, the Complaint is essentially silent on OAI, and says nothing about its operations or authority.  Rather, it merely notes that Mr. Kushner is its Director, Compl. ¶ 10, that Ja'Ron Smith is its Deputy Director, *see* Compl. ¶ 40, and that several other people are not employed within it, *see id.* ¶¶ 43, 45, 47, 49, 51, 53, 55, 57.  There are thus no facts in the Complaint supporting the proposition that OAI satisfies the requirements of an APA agency.  *See Bell Atl.*

---

[2] Plaintiff says that "[t]he status of OAI as an 'agency' under the APA is an open question because FOIA and the APA define the term 'agency' differently."   Opp'n at 8 n.1 (citing *Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*, No. 19-cv-02906, 2020 WL 2838568, at *3-5 (D.D.C. June 1, 2020)).  But that decision held only that an entity could be an agency for purposes of FOIA but *not* for purposes of the APA, because "FOIA incorporates [the APA's definition of "agency"] but also expands it." *Elec. Privacy Info. Ctr.*, 2020 WL 2838568, at *3.  The Court did *not* hold that an entity could be an agency for purposes of the APA and *not* for FOIA, nor would such reasoning make sense.

*Corp. v. Twombl*y, 550 U.S. 544, 570 (2007) (a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face.").

Third, Plaintiff cites two online articles in support of its claim that OAI has substantial independent authority.  It asserts that OIA has "commandeered resources to create drive-thru coronavirus test sites," Opp'n at 9 (citing Dan Diamond, *How a 96-hour project helped Trump's team reverse its testing debacle*, Politico, May 5, 2020, available at https://www.politico.com/news/2020/05/05/coronavirus-trump-testing-partnership-23613 [hereinafter "Politico Article"]), and "has convened a task force to explore using location tracking data to fight the coronavirus," *Id.* at 9 (citing Ellen Sheng, *Facebook, Google discuss sharing smartphone data with the government to fight coronavirus, but there are risks*, CNBC, Mar. 19, 2020, available at https://www.cnbc.com/2020/03/19/facebook-google-could-share-smartphone-data-to-fight-coronavirus.html. [hereinafter "CNBC Article"]).  But it is black-letter law that a plaintiff cannot amend her complaint via her opposition to a motion, as Plaintiff attempts to do here.  *See, e.g.*, *In re Navy Chaplaincy*, 850 F. Supp. 2d 86, 116 (D.D.C. 2012).  And on the merits, neither of the articles Plaintiff cites actually supports the propositions Plaintiff characterize them as having.  The Politico Article does *not* say that OIA "commandeered" resources, or indeed make any reference to what OIA actually did; it simply says that people working on Coronavirus issues "crowded into the Office of American Innovation, housed in the basement of the West Wing, as Kushner rounded through the office and laid out instructions."  Politico Article.  An entity does not become an agency subject to the APA merely because people use its office space.  And the CNBC Article merely says that OAI is "in discussions" with technology companies "about the possibility of using location and movement data."  CNBC Article.  But discussions alone do not

transform an entity into an agency—particularly when that entity is part of the White House Office, which appropriately has discussions with any number of people about any number of matters.

## III. PLAINTIFF CANNOT ESTABLISH A "CLEAR AND INDISPUTABLE" RIGHT TO MANDAMUS AND THEREFORE THIS COURT LACKS MANDAMUS JURISDICTION.

Plaintiff can thus only proceed through the "dramatic and extraordinary remedy" of mandamus, *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004).  This requires a plaintiff to show a right to relief that is "clear and indisputable," *id.*, otherwise, the "court must dismiss this case for lack of jurisdiction, *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  This is a demanding standard, even more so when applied against the White House.  *See* MTD at 17-18.

Plaintiff does not challenge the stringency of the mandamus standard, or that such stringency is multiplied when mandamus is sought against the President or his staff.  *See* Opp'n at 10-14.  Rather, it argues that the text of FACA provides mandatory duties that can be enforced via mandamus.  *See id.*  But this begs the dispositive question: the issue is not whether *FACA*'s obligations are clear and indisputable; it is whether the so-called "Clemency Task Force" is "clearly and indisputably" *a committee subject to FACA*.  And here, it simply is not, regardless of whether the Court looks solely to the allegations in the Complaint, or whether it appropriately considers the facts detailed in Mr. Smith's sworn declaration.

### A.  The Facts in the Complaint Do Not Establish Plaintiff's Mandamus Jurisdiction

Plaintiff spends much of its brief challenging Defendants' declaration establishing that there is no "Clemency Task Force."  But while this declaration is entirely proper, *see infra* III.B, this Court need not even reach the issue, because Plaintiff's Complaint is facially insufficient.[3]

---

[3] Plaintiff claims that Defendants do not "contest the legal sufficiency of those allegations [in the Complaint]."  Opp'n at 14.  Not so.  *See, e.g.*, MTD at 20-21 ("Plaintiff fails to plead any of the requisites of formality and structure"); *id.* at 24-26 (Plaintiff fails to plead that government

To survive a motion to dismiss pursuant to Rule 12, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557), and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Indeed, "a plaintiff's" factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).  Plaintiff's underlying factual allegation is wrong: there is no "Clemency Task Force."  But setting that essential element to one side, Plaintiff never pleads *facts* establishing that such a "Task Force" exists and is subject to FACA.  Accordingly, solely taking Plaintiff at its word, its Complaint does not state facts sufficient to invoke this Court's mandamus jurisdiction.

*First*, Plaintiff never alleges that any non-governmental individuals held a vote or a veto over the so-called "Task Force's" recommendations.  "[A] committee is composed wholly of federal officials [and thus not subject to FACA] if the President has given no one other than a federal official a vote in or, if the committee acts by consensus, a veto over the committee's decisions."  *In re Cheney*, 406 F.3d 723, 728 (D.C. Cir. 2005) (en banc); *see also Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 11 (D.D.C. 2018) ("What is clear from the case law is that, for an individual to be considered a FACA committee member, he or she must have a 'vote in, or if the committee acts by consensus, a veto over the committee's decisions.'") (citing *Cheney*, 406

---

official "established or utilized" a FACA committee); *id.* at 27 ("Here, the Complaint is completely silent on whether any alleged members held a vote or a veto.").

F.3d at 728); MTD at 27-28.  Both Plaintiff's Complaint and their opposition are devoid of the word "vote" or "veto" in reference to any of the supposed members of the "Task Force."  *See generally* Compl.; Opp'n.  This is a required element of a FACA claim, and just like in *Cheney*, the failure to allege that non-governmental individuals had such a vote or veto resolves this case. *See Cheney*, 542 U.S. at 393-94 ("Neither Judicial Watch nor the Sierra Club explicitly claimed that any non-federal individual had a vote on the [committee] or had a veto over its decisions. . . . And there is nothing to indicate that non-federal employees had a right to vote on committee matters or exercise a veto over committee proposals.  Therefore, the NEPDG was not a FACA advisory committee.  It follows that the government owed the plaintiffs no duty, let alone a clear and indisputable or compelling one."); *see also id*. at 394 (ordering complaint dismissed where "[t]here is no allegation [in the complaint], however, that any supposed subgroup made an official decision, much less that anyone other than a federal official ever had a vote in or veto over such a decision.").  Plaintiff has thus failed to plead an essential element of their case, and thus the Complaint must be dismissed.[4]  Indeed, Plaintiff fails to challenge or address this requirement in its brief, and so may be taken as conceding that the Complaint does not establish this requirement. *See Potter*, 839 F. Supp. 2d at 53.

*Second*, Plaintiff does not plead facts showing that the so-called "Task Force" was "established or utilized" by the government.  5 U.S.C. app. 2 § 3(2); *see also* Opp'n at 24-26.  This is a required element that must be pled as part of a FACA claim.

---

[4] Plaintiff claims that "contrary to Defendants' contentions, FACA does not require a specific voting mechanism, so long as the committee engages in collective deliberations and recommendations."  Opp'n at 24.  As discussed above, per *Cheney*, this is wrong – at a minimum, non-governmental members must have a vote or (if the committee acts by consensus) a veto.

"An advisory group is 'established under FACA if it is 'actually formed by the agency,'" *VoteVets Action Fund v. U.S. Dep't of Veterans Affairs*, 414 F. Supp. 3d 61, 68-69 (D.D.C. 2019) (quoting *Byrd v. EPA*, 174 F.3d 239, 245 (D.C. Cir. 1999)), *filing appeal*, No. 19-5337 (D.C. Cir. Nov. 27, 2019).  "This requirement suggests that the government must take formal, affirmative steps to 'establish' one." *Id.* at 69; *see also Tidwell*, 239 F. Supp. 3d at 218 (plaintiff met pleading standard by asserting that "the Forest Service announced via an 'initiation letter' that it was convening 'a team of experienced managers and scientific advisors' to develop the conservation strategy.").  Plaintiff does not dispute this is the proper standard.  Opp'n at 23.  Indeed, Plaintiff does not even claim in the Complaint that the "Task Force" was ever "established" by a federal official; it merely states that the group was "established or utilized by the President and/or Defendant Kushner."  *E.g.*, Compl. ¶¶ 3, 9, 79, 82.  By using the disjunctive "established or utilized" phrase, Plaintiff never actually alleges that the defendants "established" the "Task Force" *at all*.  And Plaintiff certainly does not allege *any* facts that would show any sort of "formal, affirmative steps" on the part of the government, as FACA requires. *See generally* Compl; Opp'n.  Accordingly, Plaintiff's conclusory references to "established" are merely the formulaic recitation of the elements of a claim that are plainly insufficient under Rule 12.

Plaintiff fares no better with "utilized."  This is a term of art in the FACA context, where a committee "is deemed to be 'utilized' if the executive exercises 'management and control' over the group's membership and mission." *Food & Water Watch*, 357 F. Supp. 3d at 10 (quoting *Byrd*, 174 F.3d at 245-48).  Plaintiff pleads no facts in the Complaint showing such "strict management," *Byrd*, 174 F.3d at 246, or indeed any management at all.  Nor does it claim to do so in its opposition.  Rather, Plaintiff simply states that, "the Task Force has considered and advised on specific clemency applications that were ultimately granted by Defendant President Trump."  Opp'n at 23.

10

This says nothing about whether the White House managed or controlled the "Task Force," as the D.C. Circuit requires.  Indeed, this is the precise situation that confronted the court in *Judicial Watch v. Department of Commerce*, 736 F. Supp. 2d 24, 34 (D.D.C. 2010) and *VoteVets*, 414 F. Supp. 3d at 70 – both cases cited by *Plaintiff* as example of  FACA "allegations, taken as true, [that] were still legally insufficient to state a claim."  Opp'n at 19-20; *see also Judicial Watch*, 736 F. Supp. 2d at 34 (acknowledging that "[t]he plaintiff in this case avers that the NACC provides policy recommendations to the defendants and acts as a conduit between them and the business community," but concluding that these facts do not constitute "alleg[ations] that the defendants exercise any management authority or control over the NACC.").  Plaintiff's mere references to a required statutory element, without any attempt to plead facts supporting the existence of such an element, independently requires dismissal of the Complaint under Rule 12.

*Third*, the Complaint lacks allegations of sufficient indicia of formality and structure on the part of the "Task Force."  *See, e.g.*, *Food & Water Watch*, 357 F. Supp. 3d at 11.  Plaintiff relies mainly on the fact that "[t]he complaint names specific members of the Clemency Task Force, based on public information, as well as its Designated Federal Officer and Chair, Defendant Kushner." Opp'n at 21.  But merely naming purported members is not enough to establish a FACA claim.  *See, e.g.*, *VoteVets Action Fund*, 414 F. Supp. 3d at 70 (acknowledging that plaintiff alleges multiple individuals are "part of the Council" but granting motion to dismiss on grounds that purported Council was not subject to FACA).  Nor, more importantly, does Plaintiff plead any facts establishing an "organized structure," *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 989, 914 (D.C. Cir. 1993) ("*AAPS*").  Plaintiff does not dispute that there are no allegations that the alleged "Task Force" has "give[n] publicized advice as a group," *id.* at 915, the hallmark of an organized structure.  Moreover, the *Washington Post* article Plaintiff cites as a

source of "public information" refers to the White House's clemency efforts as "informal" *five* times. *See* Ex. 2, ECF No. 16-3, at 3, 6, 7, 11 ("Ex. 2").[5]

Plaintiff in its opposition points to a supposed "division of responsibility" among the members and suggests that the alleged "Task Force" members "may have specialized roles or carry out more than one task." Opp'n at 22. But the Complaint is silent as to such a division. And the *Post* article does not suggest that these individuals with different roles were part of the same organization; it merely describes them as playing a role in a "clemency initiative" writ large. *See generally* Ex. 2. Multiple private parties can be in involved in a broad initiative without transforming that initiative (if it even was one) into a FACA committee, and it is not "plausible" that the facts alleged in the Complaint indicate that there exists an entity that is sufficiently organized to constitute a FACA committee.

To support its allegations of structure, Plaintiff states that there have been "regular meetings." Opp'n at 23. But even if this is true – and it is not – "the number of meetings is not dispositive, or even particularly probative, especially where . . . many of these 'meetings' were not meetings at all but simply email exchanges or phone calls, which apparently did not take place according to a regular schedule." *Food & Water Watch*, 357 F. Supp. 3d at 12; *Nader v. Baroody*, 396 F. Supp. 1231, 1232, 1234 (D.D.C. 1975) (holding that FACA did not "apply to all amorphous, ad hoc group meetings."). Plaintiff pleads no fact about the nature or structure of such meetings that would allow any inferences that the "Task Force" is subject to FACA.

---

[5] Plaintiff disputes this reference as merely a "journalistic characterization." Opp'n at 22 n.6. But it is a public fact about the nature of the so-called "Task Force," and is incorporated into the Complaint by reference, and thus should be considered at the motion to dismiss stage. Moreover, the same article's references to a "task force" are themselves "journalistic characterizations" rather than direct quotes. *See* Ex. 2, at 3, 5, 7. Plaintiff cannot pick and choose which "journalistic characterizations" it credits; either all are valid, or none are.

*Finally*, Plaintiff alleges that the "Task Force" has provided "collective advice or recommendations."  *See* Opp'n at 24.  But "collective advice or recommendations" is, again, an *element* of a FACA claim.  *See Food & Water Watch*, 357 F. Supp. 3d at 11.  Merely stating that element, without any facts to establish that the advice is actually collective, is a conclusory allegation of a cause of action that fails to state a claim under Rule 12.

Accordingly, based solely on the pleadings, Plaintiff has failed to state the existence of a committee that satisfies FACA's statutory requirements.  Its Complaint must be dismissed.

### B.  The Smith Declaration Confirms That Plaintiff Lacks Mandamus Jurisdiction

As discussed extensively in Defendants' opening brief, while Plaintiffs fail to plead the requirements of a FACA committee, the declaration of Ja'Ron Smith—Deputy Director of the White House Office of American Innovation and an alleged "member" of the "Clemency Task Force"—confirm that there is *no such* "Task Force," much less one that satisfies the requirements of FACA.  *See* MTD at 19-28.  His declaration relied on "personal knowledge and information made available to [him] in the course of [his] official duties," Decl. of Ja'Ron Smith, ECF No. 16-2 ("Smith Decl."), and is not therefore "limited to [his] personal knowledge," Opp'n at 28, as Plaintiff claims.  Moreover, it was sufficiently detailed to resolve the question of whether there was "clearly and indisputably" a committee subject to FACA.  In its opposition, Plaintiff challenges the admissibility of this declaration, but notably, does not seriously dispute that these facts—sworn under penalty of perjury—establish that the alleged "Task Force" does not and did not exist.  *See generally* Opp'n; MTD.

Rather, Plaintiff says that a declaration is inadequate in a Rule 12(b)(1) context, at least where the declaration incorporates purportedly disputed facts.  *See* Opp'n at 16-20.  This is not so. To the contrary, the D.C. Circuit is clear that a district court can resolve a motion to dismiss

pursuant to Rule 12(b)(1) by considering "the complaint supplemented by undisputed facts evidenced in the record, or in the complaint supplemented by undisputed facts *plus the court's resolution of disputed facts*." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (emphasis added) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992))[6]; *Wesberry v. United States*, 205 F. Supp. 3d 120, 124 n.3 (D.D.C. 2016) ("For the purposes of deciding whether this Court has subject matter jurisdiction, the Court will consider evidence outside of the pleadings, including the declaration provided by the government and documentary evidence provided by both parties."), *denying reconsideration*, 304 F. Supp. 2d 30 (D.D.C. 2018).  This process has been followed in FACA cases: in the seminal *In re Cheney* decision, for example, the *en banc* court explicitly relied, in ordering the complaint dismissed, on "the sworn declaration of Karen Knutson, filed by the government with the district court in September 2002."  406 F.3d at 730 (internal citation omitted).[7]  And while Plaintiff cites a case where the district court "denied a motion to dismiss a FACA suit based on a declaration attesting to facts contradicting the complaint," Opp'n at 17 (citing *Tidwell*, 239 F. Supp. 3d at 228-29), that was in the context of a Rule 12(b)(6) motion, where such declarations are not permissible without converting the matter to summary judgment.

---

[6] In *Herbert*, the D.C. Circuit qualified this requirement in two respects.  First, the court should provide "an explicit explanation of its findings," *Herbert*, 974 F.2d at 197-98, and second, a caution that "though the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard," *id.* at 198.  Plaintiff focuses on the latter dicta, *see* Opp'n at 17, but with respect to mandamus against the President and his personal staff, this advice has been supplanted by *Cheney*, which resolved the jurisdictional issue *before* allowing discovery.

[7] The fact that this declaration was filed as part of an opposition to discovery is irrelevant: the D.C. Circuit determined it *lacked* mandamus jurisdiction on the basis of such a filing, rather than on the basis of discovery, and directed the district court to dismiss the complaints.

Here, there is comparable sworn evidence to that relied upon in *Cheney,* submitted in support of a Rule 12(b)(1) motion alleging a lack of mandamus jurisdiction.  Accordingly, it is entirely appropriate for this Court to resolve the disputed facts (such as whether there was a "Clemency Task Force," how many members it had, and how many times it met), simply by determining that it found a sworn declaration executed by a purported member of the Task Force, under penalty of perjury and based on his personal knowledge and information given to him in his official capacity, more credible than an ambiguously phrased *Post* article that contains hearsay.

But this Court need not even resolve these (limited) disputed facts, as the *undisputed* facts in the Smith Declaration are sufficient to resolve this case.  Indeed, it is notable what facts Plaintiff does *not* meaningfully dispute, including:

- "The White House never formed a group containing individuals not employed by the federal government with a consistent membership list or hosted regular or recurring meetings of any such group to provide advice on clemency issues."  Smith Decl. ¶ 14.

- "At no point did the White House provide government funding or workspace to individuals not employed by the federal government for the purpose of advising the President on clemency issues."  *Id*. ¶ 15.

- "The White House did not approve any organization or leadership structure for any groups containing individuals not employed by the federal government providing recommendations on clemency issues, nor did it approve or create subgroups based on subject matter expertise or any other organizing principle."  *id*. ¶16.

- "The White House did not approve or create any process through which the members of any group could vote on (or veto) any collective advice or recommendations concerning clemency issues, nor did it approve or create any process through which any group containing individuals not employed by the federal government could arrive at collective advice or recommendations concerning such issues."  *Id.* ¶ 17.

- "Only four of the eight Alleged Private Task Force Members attended this meeting [on November 19, 2019].  During this meeting, White House officials solicited input on clemency issues, and meeting attendees shared their individual views on such issues.  There have not been any other White House meetings concerning clemency issues that included the same (or a substantially similar) list of attendees as the November 19, 2019 meeting."  *Id.* ¶ 20.

15

- "One of the Alleged Private Task Force Members who attended the November 19, 2019 meeting sent a list of potential clemency candidates to the White House approximately one month later.  Moreover, some of the Alleged Private Task Force Members have occasionally recommended other potential clemency candidates to the White House on an *ad hoc* basis.  The White House did not supervise, control, or know the process that was used to select these potential clemency candidates.  The White House also does not know how many people were consulted in connection with selecting these potential clemency candidates, much less the identity of all such individuals."  *Id*. ¶ 22.

- "To the extent any individuals not employed by the federal government have represented themselves as being part of a 'Clemency Task Force' approved or created by the White House, those representations are inaccurate."  *Id*. ¶ 23.

As explained in more detail in Defendants' opening brief, these facts themselves illustrate that it is not "clear and indisputable" that Plaintiff has established mandamus jurisdiction.

Finally, even if this Court determined that a motion to dismiss is not the proper basis for resolving the question of mandamus jurisdiction, the Court could convert the motion to dismiss into a motion for summary judgment, just like the Court did in *Freedom Watch, Inc. v. Obama*, 930 F. Supp. 2d 98 (D.D.C. 2013) and *Citizens for Responsibility & Ethics in Washington v. Leavitt*, 577 F. Supp. 2d 427, 434 (D.D.C. 2008) – both of which were decided in the government's favor on the basis of declaration evidence, without discovery.

### C.  Plaintiff Is Not Entitled to Rule 56(d) Discovery.

Plaintiff also says it is entitled to Rule 56(d) discovery.  It is not.  Its request is procedurally and substantively infirm, and directly contradicts the Supreme Court's specific holding in *Cheney* —that a plaintiff is not entitled to expansive discovery against the White House in an attempt to confirm the existence of a *de facto* FACA committee, particularly where that discovery would provide *more* information than it would be entitled to even if it received complete relief.

To forestall the entry of summary judgment under Federal Rule of Civil Procedure 56(d), Plaintiff bears the burden of demonstrating "with 'sufficient particularity . . . why discovery [is] necessary.'" *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (quoting *Strang v. U.S.*

*Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989)).  Rule 56(d) requires

Plaintiff to submit an affidavit that satisfies three criteria: (1) "it must outline the particular facts

[s]he intends to discover and describe why those facts are necessary to the litigation"; (2) "it must

explain 'why [she] could not produce [the facts] in opposition to the motion [for summary

judgment];'" and (3) "it must show the information is in fact discoverable."  *Convertino v. U.S.

Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (first quoting *Byrd v. U.S. Envtl. Prot.

Agency*, 174 F.3d 239, 248 (D.C. Cir. 1999), then quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n*,

174 F.3d 231, 237 (D.C. Cir. 1999)).  The D.C. Circuit has cautioned, moreover, that "[i]t is . . .

incorrect to conclude" that Rule 56(d) requests should be granted "more often than not;" rather,

each request must be resolved "based on [the] application of the *Convertino* criteria to the specific

facts and circumstances presented in the request."  *United States ex rel. Folliard v. Gov't

Acquisitions, Inc.*, 764 F.3d 19, 26–27 (D.C. Cir. 2014).

      Plaintiff fails to meet these criteria.  First, its declaration is procedurally flawed.  As an

initial note, Rule 56(d) sets out procedures for opposing a summary judgment motion; but no such

motion has even been filed.[8]  Moreover, Rule 56(d) requires the plaintiff to show, via affidavit,

what facts it intends to discover, why those facts are necessary to the ligation, and why they could

not be presented earlier.  But Plaintiff only identifies what facts it seeks.  *See* Pl.'s Rule 56(d) Del.

¶ 3, ECF No. 17-1 ("Sandick Decl.").  It does not say *why* those facts are necessary to the litigation,

as it must do under *Convertino*.  *See* 684 F.3d at 99; *see also Moseley v. King*, 197 F. Supp. 3d

210, 219 (D.D.C. 2016) (plaintiff must demonstrate that her requested discovery "would alter the

court's determination regarding summary judgment); *Am. Oversight, Inc. v. U.S. Dep't of Health*

---

[8] Rule 56(d) relief is improper even if this Court were to convert Defendants' motion to
dismiss into a motion for summary judgment.

*& Human Servs.*, Civ. A. No. 17-827 EGS/DAR, 2018 WL 4765145, at *12 (D.D.C. Aug. 10, 2018) ("Plaintiff does not describe with any particularity the reasoning behind their assertion that these facts are necessary to the Court's decision on the motion for summary judgment.").

Nor does Plaintiff explain why it cannot produce the facts it seeks, other than a general assertion that "Defendants are in sole position of information necessary to determine whether summary judgment in favor of Defendants is appropriate." Sandick Decl. ¶ 3. But this is exactly the type of generalized statement that courts routinely reject. *See, e.g.*, *Freedom Watch*, 930 F. Supp. 2d at 103 (rejecting Rule 56(d) motion that "simply states that the defendants 'are in sole custody' of the relevant information"); *Am. Oversight*, 2018 WL 4765145, at *12 (rejecting plaintiff's affidavit that "asserts that Defendants are in sole possession of necessary information" as insufficient for Rule 56(d) discovery). Nor is that claim even true. Setting aside the critical point that *there is no Task Force*, to the extent Plaintiff believes its factual allegations, it *already knows* the members of the alleged "Task Force,"[9] *see* Compl. ¶¶ 42-57, and therefore Defendants are not in sole possession of information about which federal officials established the group, Sandick Decl. ¶ 3(a), its membership, *id.* ¶ 3(b), what those members' duties and responsibilities are, *id.* ¶3(c), the times, dates, and names of participants for all meetings or conference calls that these individuals attended, *id.* ¶ 3(d), the topics, agenda, and calendar invitations for those meetings, *id.* ¶ 3(e), and the nature of those meetings and conference calls, *id.* ¶ 3(f).

Nor can Plaintiff otherwise show an entitlement to this information, or that the information is otherwise discoverable. The first three categories seek information about the names of officials involved in establishing the alleged Clemency Task Force; the membership of the alleged

---

[9] Four of the non-federal individuals were at a November 2019 meeting, even though such meeting was not a meeting of a FACA committee. *See* Smith Decl. ¶ 20.

Clemency Task Force; and the duties and responsibilities of the members of the alleged Clemency Task Force.  *See* Sandick Decl. ¶ 3(a)-(c).  But Plaintiff has this information: as Mr. Smith already explained, "the White House never established a group [of individuals] not employed by the federal government to provide collective advice on [clemency] issues and has no intention of doing so."  Smith Decl. ¶ 12.  It did not approve any structure or fund any operations of such a group, *id.* ¶¶ 15-17, there is no "consistent membership list," *id.* ¶ 14, and individuals that the Complaint claims are part of such a group are not, in fact, part of such a group, *id.* ¶ 18, and to the extent anyone has claimed to be part of such a group, they are mistaken, *id.* ¶ 23.  No one, therefore, established a "Clemency Task Force" (or a comparably similar entity); there are no members; and those non-existent members have no responsibilities.  Plaintiff cannot use Rule 56(d) to seek information it already has.  *See, e.g.*, *Agelli v. Sebelius*, Civ. A. No. DKC 13-497, 2014 WL 347630, at *10 (D. Md. Jan. 30, 2014) (denying Rule 56(d) motion when "Plaintiff already has access" to the information she seeks); *Slama v. City of Madera*, No. 1:08-cv-810 AWI GSA, 2012 WL 1067198, at *2 (E.D. Cal. Mar. 28, 20212) (denying Rule 56(d) motion where plaintiff seeks "information that would bolster or supplement facts that he already has").

Plaintiff claims (in its brief, not its declaration, as it must under Rule 56(d)), that it has "credibility concerns" about the Smith Declaration.  Opp'n at 27.  But "[w]here, as here, plaintiff offers no reason to doubt [the declarant's] veracity, discovery under Rule 56[(d)] may not be used to test her credibility."  *Leavitt*, 577 F. Supp. 2d at 434 (citing *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989)); *Freedom Watch*, 930 F. Supp. 2d at 103 (same).  Plaintiff merely has its characterization of a hearsay *Washington Post* article.  In the face of a sworn declaration, particularly in light of the longstanding precedent that government officials' declarations are entitled to a presumption of good faith, *see Fischer v. U.S. Dep't of*

*Justice*, 723 F. Supp. 2d 104, 108 (D.D.C. 2010); *Corel Corp. v. United States*, 165 F. Supp. 2d 12, 35 (D.D.C. 2001), Plaintiff cannot create a meaningful credibility concern.  Plaintiff further notes that "Defendants' modest reveal of additional facts raises additional questions," Opp'n at 29, but does not explain why the answers to those questions are legally relevant.

Plaintiff also claims that the "Smith Declaration conflicts with publicly reported information."  Opp'n at 28.  But it does not, even assuming that such hearsay is accurate.  Plaintiff says that "public reporting discloses that President Defendant Trump 'assembled a team of advisers to recommend and vet candidates.'"  *Id.*  This is entirely consistent with the Smith Declaration's statement that "*the White House* never established a group containing individuals not employed by the federal government to provide collective advice on [clemency] issues and has no intention of doing so."  *Id.* (quoting Smith Decl. ¶ 12).  The *Washington Post* statement never says that such a "team," for example, provided collective advice, or even was composed of non-governmental individuals.  Plaintiff also says that the purported task force "has been meeting since late last year to discuss a revamped pardon system in the White House."  *Id.*  But the Smith Declaration states that in 2019, a "one-time meeting regarding clemency issues took place at the White House," Smith Decl. ¶ 20, and that no similar meetings occurred, *id.* ¶ 21.  The *Washington Post* article never mentions multiple meetings, and so again, there is no such inconsistency.  Finally, Plaintiff says that "[p]ublic information" identifies four individuals "as part of the group," Opp'n at 28, even though the Smith Declaration said that these individuals were "not part of 'any Clemency Task Force' approved, created, or utilized by the White House, Smith Decl. ¶ 18.  Again, though, there is no inconsistency – the *Washington Post* article describes an "informal network of advocates providing clemency recommendations," *see* Ex. 2, at 6, not a task force subject to FACA (or anything else with similar scope or authority).

The remaining categories of information are similarly not discoverable, because Plaintiff seeks expansive discovery about the White House clemency process that flies in the face of the Supreme Court's admonitions in *Cheney* and *Public Citizen*.   Plaintiff requests meeting information, including dates, times, and participants, calendar invitations, agendas, and topics, and information about "[t]he nature of those meetings or conference calls, including whether they involved deliberations about or substantive discussions of potential federal actions that included debate and discussion among the nongovernmental participants," between three federal officials, and any of the nongovernment individuals identified in the Complaint or "more than one individual who is not a federal employee," "regarding clemency, pardon, or commutation issues after September 1, 2019."  Sandick Decl. ¶¶ (d) – (f).

This is an extraordinary demand.  It is incompatible with the Supreme Court's ruling in *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 453 (1989), where the Court held that FACA was "not intended to cover every formal and informal consultation between the President . . . and a group rendering advice."  Nor can it be squared with the Supreme Court's decision in *Cheney*, where, as here, plaintiff sought broad discovery against the President's senior advisors in an attempt to prove the existence of a FACA committee, and the Supreme Court explicitly rejected that claim.  Importantly, *Cheney* held—in a situation materially indistinguishable from here—that discovery in a *de facto* FACA case is not appropriate when the plaintiff seeks "all the disclosure to which they would be entitled in the event they prevail on the merits, and much more besides." *Cheney*, 542 U.S. at 388.  Plaintiff seeks "much more besides."  *Id.*  It requests *any* clemency related communications of one of the President's top aides, and several other key advisors, so long as there were one or two non-governmental individuals involved.  *See* Sandick Decl. ¶ 3(d)-(f).  It

is not entitled to such information: such conversations are not an element of a FACA claim, and the impact on the President's ability to receive advice were that so would be exceptional.

Indeed, by Plaintiff's theory, anytime there was a newspaper article, blog post, or perhaps even idle speculation that two or more people had formed a "committee" to advise the President, a plaintiff would be entitled to sweeping discovery about the nature of sensitive conversations between a senior advisor to the President (or even the President himself) and *any* set of non-governmental individuals as it relates to the subject of that purported committee. But Rule 56(d) cannot be used to give information about the "details of [purported FACA] meetings," because that "would effectively provide plaintiff with the very relief it seeks on the merits." *Leavitt*, 577 F. Supp. 2d at 434. Here, Plaintiff seeks information it is unquestionably *not* entitled to under FACA. Such information is not discoverable, and Plaintiff's Rule 56(d) request must be denied.

### D. Applying FACA to Advice About the President's Pardon Determinations Would Constitute Impermissible Interference With the President's Article II Powers.

As Defendants explained in their opening brief, *see* MTD at 28-30, both the Supreme Court and the D.C. Circuit have recognized that extending FACA to the process by which the President receives advice risks interfering with the President's Article II powers in a way that raises constitutional concerns. Substantively, these doctrines require, at a minimum, that the Court construe FACA narrowly to ensure that Congress absolutely intended to extend FACA to the supposed conduct in this case, *Pub. Citizen*, 491 U.S. at 467, and to construe the statute in a way that avoids such improper interference, *Center for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836, 843-44 (D.C. Cir. 2008). And, potentially, these doctrines would hold FACA itself unconstitutional as applied to the President in this context. *See Pub. Citizen*, 491 U.S. at 482 (Kennedy, J., with whom Rehnquist, C.J., and O'Connor, J., join, concurring in the judgment). Procedurally, they require that the district court proceed with extreme caution and sensitivity to

the President's Article II powers and the need to keep his communications confidential.  *See Cheney*, 542 U.S. at 385.

Separation-of-powers concerns permeate this entire case: this Court must construe FACA narrowly, and in particular, must strictly determine whether Defendants have "clearly and indisputably" created a committee subject to FACA.  It must also be sensitive to a construction of FACA that would have the effect of "improper interference" with the President's Article II powers, and any attempt to seek information from the White House must be governed by the "[s]pecial considerations [that] control when the [Executive's] interest in maintaining [its] autonomy . . . and safeguarding the confidentiality of its are implicated."  *Cheney*, 542 U.S. at 385.

Plaintiff's opposition does not engage with these underlying analytical principles.  Instead, it attempts—and fails—to distinguish the precedent.  It says that, "Defendants do not, however, cite a single case where FACA claims were dismissed prior to discovery solely because of separation-of-powers concerns."  Opp'n at 30.  But *Public Citizen* did just that: affirming a motion to dismiss because of a statutory interpretation it adopted to avoid those very constitutional concerns.  *See* 491 at 448, 466-67.  Plaintiff says *Cheney* solely concerned the principle that mandamus was appropriate when "valid threshold grounds for dismissal, denied by the district court, would obviate the need for intrusive discovery against the Vice President."  Opp'n at 30 (quoting *In re Cheney*, 544 F.3d 311, 313 (D.C. Cir. 2008)).  That is not true: the Supreme Court's *Cheney* decision, as discussed above, made clear that special considerations, grounded in Article II, are implicated when a plaintiff seeks information about the White House's communications, as plaintiff does here, and the *en banc* D.C. Circuit court made clear that "separation-of-powers considerations have an important bearing on the proper interpretation of [FACA]."  *Cheney*, 406 F.3d at 727; *see also id.* at 728 ("In light of the severe separation-of-powers problems in applying

FACA on the basis that private parties participated in, or influenced, or were otherwise involved with a committee in the Executive Office of the President, we must construe the statute strictly."). And Plaintiff attempts to distinguish *Pray* on the grounds that the Court determined that the "subject committee was exempt from FACA because it . . . fit within an exemption written into the statute." Opp'n at 30.  But the D.C. Circuit reached that conclusion based on the need to *avoid* separation-of-powers concerns, and specifically considered if there was a "risk of impermissible interference" to the President's Article II powers.  *Pray*, 531 F.3d at 843-44.

Plaintiff also relies on the court's decision in *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 35 (D.D.C. 2011), in support of their claim that "precedent supports permitting limited discovery and avoiding the constitutional issues raised by Defendants."  Opp'n at 31.  *Freedom Watch* held no such thing.  To be sure, at the motion to dismiss stage, the Court noted that "a court should avoid reaching constitutional issues that are not strictly necessary to decide a case," and so decided not to reach the separation-of-powers issues raised by the complaint because, "[i]f the government presents evidence demonstrating that the committee at issue does not qualify under the FACA as an advisory committee, the case can be resolved on that statutory ground without reaching the constitutional question."  *Freedom Watch*, 807 F. Supp. 2d at 36.  Critically, however, in that case—unlike here— "[t]he defendants ha[d] not provided any evidence with their motion —in the form of declarations or otherwise"—in which to conclude that the entity was not an advisory committee.  *Id.* at 35 n.5.  The Court also found that Plaintiff's complaint had stated a claim, which this Complaint does not.  *See id.* at 35.  Moreover, the Court ultimately granted summary judgment to the defendants on the basis of their declarations *without additional*

*discovery*, the same posture as in this case.[10]  *See Freedom Watch, Inc. v. Obama*, 930 F. Supp. 2d at 101-03.  If *Freedom Watch* is to be followed, *that* is its teaching.

Finally, Plaintiff claims that it is not attempting to "substantially regulate" the President's advice about how he exercises his constitutional powers.  Opp'n at 31 (citing MTD at 30).  But surely it is.  Plaintiff explicitly seeks extensive private communications to the President's closest advisors about a clemency process that Article II commits to him, *see* Sandick Decl. ¶¶ 3 (d)-(f), and seeks to apply FACA, and its concomitant public disclosure requirements, to alleged *ad hoc* meetings and conversations in a way that Congress never contemplated (and which it likely lacks to the power to do).  Requiring such disclosure is substantial regulation by any means, and constitutes interference with the President's Article II powers.  Plaintiff points out that pardon-related documents held by the Department of Justice may be subject to FOIA (if an exemption does not otherwise apply), *see* Opp'n at 32.  But that proves too much.  The White House is not subject to FOIA, and Plaintiff cannot circumvent that essential distinction through the unsubstantiated allegation of a *de facto* advisory committee and a plea for discovery.

## **CONCLUSION**

For these reasons, and those stated in Defendants' opening brief, this Court should grant Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

Dated:  July 6, 2020                          Respectfully submitted,

                                              ETHAN P. DAVIS
                                              Acting Assistant Attorney General

---

[10] In *Freedom Watch*, the Court determined that the government's initial declaration did not provide enough factual support on one issue, and allowed the government to supplement its summary judgment motion with a new declaration.  *See* Mem. Order, *Freedom Watch, Inc. v. Obama*, No. 1:09-cv-02398-RWR, ECF No. 28 (July 13, 2012). The Court did not allow for discovery.  If this Court determines that the Smith Declaration is inadequate, Defendants respectfully submit it should follow the same practice.

DAVID M. MORRELL
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Joseph E. Borson*
JOSEPH E. BORSON (Va. Bar No. 85519)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-1944 / Fax: (202) 616-8460
E-mail: Joseph.Borson@usdoj.gov

26