## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Case No. 20-00716 (RJL) |
| | ) |
| JOSEPH R. BIDEN, JR., in his official | ) |
| capacity as PRESIDENT OF THE | ) |
| UNITED STATES, et al., | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION
(September **24**, 2021) [Dkt. #16]

In March 2020, plaintiff American Oversight filed this action against the

Executive Office of the President as well as former President of the United States Donald

J. Trump[1] and Jared Kushner[2] in their official capacities (collectively "defendants")

alleging that defendants established an advisory committee to counsel then-President

Trump on the "use of his clemency power" during the previous Presidential

Administration.  *See* Compl. ¶¶ 3, 98–127.  Plaintiff contends this committee, which it

---

[1] The current President of the United States, Joseph R. Biden, Jr., is automatically substituted for Donald J. Trump under Fed. R. Civ. P. 25(d).

[2] The Complaint styles its claims against Jared Kushner as against him in his official capacity as a "Senior Advisor to the President of the United States."  *See* Compl. [Dkt. #1].  Plaintiff clarifies that the suit "is properly understood" as against Mr. Kushner in his "official capacity as the Director of the Office of American Innovation."  Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [Dkt. #17]; *see also* Compl. ¶ 10.  The parties do not dispute that the Office of American Innovation ("OAI") is no longer operational under the current Administration and therefore lacks a Director or other "successor" to Mr. Kushner who could be substituted as a party under Federal Rule of Civil Procedure 25(d).  Defs.' Resp. to Pl.'s Supplemental Mootness Brief ("Defs.' Supp. Br.") [Dkt. #22] at 3; Pl.'s Reply to Defs.' Mem. of Law on Mootness [Dkt. #26].

refers to as the "Clemency Task Force," was subject to the Federal Advisory Committee Act ("FACA") and violated the statute's requirements by, among other things, failing to file a charter, failing to provide public notice of and access to its meetings, and failing to provide documents related to the committee's purported activities. *Id.* ¶¶ 94–97. Invoking FACA (Counts I–III), the Administrative Procedure Act (Count IV), and the Mandamus and Venue Act (Count V), plaintiff seeks an Order declaring defendants violated FACA's provisions and requiring compliance therewith. *Id.* ¶¶ 98–127.

Presently before the Court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. to Dismiss ("Defs.' Mot.") [Dkt. #16]. Defendants assert that no committee subject to FACA ever existed, plaintiff has failed to state a claim under which relief may be granted, and this Court lacks jurisdiction to otherwise provide the relief plaintiff seeks. *Id.* at 1–3. Upon consideration of the parties' pleadings, the relevant law, and the entire record, I agree with defendants that plaintiff has failed to adequately plead the existence of a committee subject to FACA and therefore cannot sustain its action under any theory. Accordingly, defendants' Motion to Dismiss is GRANTED and plaintiff's Complaint is DISMISSED.

## BACKGROUND

### A. Legal Background

Congress enacted FACA in 1972 to oversee the creation and use of advisory committees in the Executive Branch. Pub. L. No. 92-463, 86 Stat. 770 (1972); *see also Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 445–46 (1989). The statute's purpose

is to "ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory." *Pub. Citizen*, 491 U.S. at 445–46.

To achieve these ends, FACA requires advisory committees to, among other things, file a charter, make certain records publicly available, and give the public advance notice of and access to its meetings. *See* 5 U.S.C. app. 2 §§ 9(c), 10(b), 10(c).  As particularly relevant here, unless an exception applies under the Freedom of Information Act ("FOIA"), advisory committees subject to FACA must produce "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by [the committee]." *Id*. § 10(b).

The statute defines an "advisory committee" as "any committee, board, commission, conference, panel, task force, or other similar group . . . which is . . . established or utilized by the President [or one or more federal agencies] . . . in the interest of obtaining advice or recommendations." 5 U.S.C. app. 2 § 3(2).  Committees that are "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government" are exempt.  *Id*.

Although this definition is expansive, "FACA does not 'cover every formal and informal consultation between the President or an Executive agency and a group

rendering advice.'" *VoteVets Action Fund v. U.S. Dep't of Veterans Affairs*, 992 F.3d 1097, 1101 (D.C. Cir. 2021) (quoting *Pub. Citizen*, 491 U.S. at 453).  In order to implicate FACA, a committee must have "in large measure, an organized structure, a fixed membership, and a specific purpose." *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir. 1993) (hereinafter "*AAPS*").  The statute does not reach "executive consultations on policy issues with *ad hoc* collections of private individuals who are not convened 'to render advice or recommendations, *as a group*.'" *VoteVets*, 992 F.3d at 1101 (quoting *AAPS*, 997 F.2d at 913).

### B. The Present Dispute

Plaintiff brings this action in the wake of a *Washington Post* article discussing then-President Trump's exercise of the clemency power.[3]  *See* Compl. ¶¶ 1–2, 58.  In the article, which was published on February 19, 2020 and discussed a series of clemency decisions announced the day before, reporters from the *Post* claim, citing anonymous sources, that then-President Trump had "assembled a team of advisers to recommend and vet candidates for pardons."  Ex. 2 to Defs.' Mot. [Dkt. #16-3].  According to the article, an effort to "revamp" the clemency process in a manner that would minimize the

---

[3] In considering a motion to dismiss, courts "may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Gumpad v. Comm'r of Soc. Sec. Admin.*, 19 F. Supp. 3d 325, 328 (D.D.C. 2014) (cleaned up); *accord EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Here, although plaintiff does not attach the *Washington Post* article to its Complaint, it repeatedly references and cites the article.  Compl. ¶ 58; *see also* Ex. A to the Compl. [Dkt. 1-1].  Accordingly, I have considered the article, which is attached to defendants' motion to dismiss, in resolving the present motion.

Department of Justice's traditional role had resulted in an "informal task force" consisting of "at least a half-dozen presidential allies." *Id.* The article states that Jared Kushner, a senior advisor and son-in-law to President Trump, played "a leading role," and mentions numerous individuals as working with the White House on clemency issues.[4] It describes this group as an "informal network of advocates providing clemency recommendations" to the President. *Id.* According to the *Post*, the group held meetings, but the article is silent as to many specifics, including how often the group met, who was in attendance, and how the purported task force functioned. Ultimately, the article concludes that "[i]t's not clear how the people in Trump's informal network will select people to recommend for clemency" going forward. *Id.*

Three weeks after the article's publication, plaintiff brought suit. *See* generally Compl. The Complaint's allegations track the *Post* article closely. Plaintiff claims that in or around late 2019, then-President Trump established the Clemency Task Force to advise him on the exercise of his clemency power. *Id.* ¶ 3. The committee, plaintiff alleges, was led by Jared Kushner and included all of the individuals referenced in the article. *Id.* ¶¶ 39–57. Plaintiff asserts "on information and belief" that the Task Force "met several times" and reviewed, discussed, and provided collective advice and recommendations to the President regarding applications for pardons or commutations that were submitted to the White House Office of American Innovation ("OAI"). *Id.* ¶¶ 61–63. In particular, plaintiff alleges that the committee "worked together" to provide

---

[4] Specifically, the article mentions Ja'Ron Smith, Pam Bondi, Alice Johnson, Matthew Whitaker, Van Jones, Brett Tolman, Mark Holden, Paul Larkin, Marc Levin, and Kevin Roberts.

advice on a series of commutations and pardons announced on February 18, 2020. *Id*. ¶¶ 68–73. Plaintiff also alleges that the committee provided collective advice to the President on potential reforms to the pardon and commutation process. *Id*. ¶ 79.

In Counts I through III, the Complaint alleges violations of FACA's procedural requirements. Specifically, plaintiff alleges defendants failed to file a charter prior to the Clemency Task Force commencing official activity in violation of 5 U.S.C. app. 2 § 9(c) (Count I); failed to provide public notice and access to Clemency Task Force meetings in violation of 5 U.S.C. app. 2 § 10(a) (Count II); and failed to provide access to Clemency Task Force documents in violation of 5 U.S.C. app. 2 § 10(b) (Count III). *Id*. ¶¶ 105–16. In Count IV, plaintiff alleges defendants violated the APA by failing to satisfy FACA's requirements. *Id*. ¶¶ 117–23. Finally, in the alternative, plaintiff seeks in Count V a writ of mandamus compelling defendants' compliance. *Id*. ¶¶ 124–27.

On June 12, 2020, defendants moved to dismiss, arguing, among other things, that plaintiff failed to adequately plead the existence of a committee subject to FACA. Defs.' Mot. at 1–2. In conjunction with their motion, defendants submitted the declaration of Ja'Ron K. Smith, the deputy director of OAI and a deputy assistant to the President with a portfolio covering criminal justice reform and clemency issues. Ex. 1 to Defs.' Mot. ("Smith Decl.") [Dkt. #16-2]. Smith avers that while the President and his advisers received advice on clemency issues from a variety of sources, including private individuals and entities, "the White House never established a group containing individuals not employed by the federal government to provide collective advice on such issues." *Id*. ¶ 12. Smith concedes that there was one meeting on November 19, 2019

with four members of the purported Clemency Task Force where White House officials solicited input on clemency issues, but avers that this was a "one-off event" and that the individuals shared only their "individual views" on clemency issues. *Id*. ¶¶ 20–21. Smith avers no other similar meetings ever occurred including the same individuals or a substantially similar set of individuals. *Id*.

On March 12, 2021, in light of the change in Presidential Administrations, I ordered supplemental briefing addressing whether plaintiff's claims were moot. *See* Order on Supplemental Briefing [Dkt. #20].  In response, plaintiff forthrightly conceded that the purported committee "no longer exists." Pl.'s Supp. Mem. of Law on Mootness ("Pl.'s Supp. Br.") [Dkt. #21] at 1.  Accordingly, plaintiff acknowledged that all of its non-documentary claims are moot. *Id*.; Defs.' Supp. Br. at 1.  Specifically, Counts I and II are moot in their entirety because "there is no longer a risk that the Clemency Task Force will continue to operate or meet while defying the FACA requirements that it file a charter and that it provide public notice of and access to meetings." Pl.'s Supp. Br. at 1. Similarly, Counts IV and V are moot to the extent those Counts are based on the alleged charter and public notice and access violations. *Id*.

Plaintiff continues to press its document-related claims, however, arguing that a claim for document disclosure survives the termination of a FACA advisory committee. *Id*. at 2. Defendants, for their part, forthrightly concede that caselaw in this Circuit supports plaintiff's position. *See* Defs.' Supp. Br. at 4–5.  As such, defendants urge the Court to declare all of plaintiff's non-document-related claims moot and address solely the merits of plaintiff's document-related claims.

## STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Where a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (quoting *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009)). Under Rule 12(b)(1), plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction. *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). The Court must accept as true all well pleaded factual allegations and draw all reasonable inferences in plaintiff's favor. *Taylor*, 821 F. Supp. 2d at 372. But "the Court may give the plaintiff's factual allegations closer scrutiny" than it would in assessing a motion under Rule 12(b)(6). *Logan v. Dep't of Veteran Affairs*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6)

In analyzing a motion to dismiss under Rule 12(b)(6), the Court similarly accepts the factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). That is, the complaint must contain sufficient factual allegations that, if accepted as true, state a claim to relief that "is plausible on its face." *Id.* at 570.

Plaintiff's entitlement to relief must rise above mere speculation. *Id.* at 555.

## ANALYSIS

### A. Mootness

The doctrine of mootness is rooted in the "case" or "controversy" language of Article III, which limits this Court's subject-matter jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006). Because "a plaintiff must establish jurisdiction for each claim," *Triple Up Ltd. v. Youku Tudou Inc.*, No. 17-7033, 2018 WL 4440459, at *1 (D.C. Cir. July 17, 2018) (per curiam) (citations and quotations omitted), mootness must be analyzed on a claim-by-claim basis. *See Louie v. Dickson*, 964 F.3d 50, 54 (D.C. Cir. 2020) ("proceed[ing] claim by claim" because mootness "applies to each form of relief requested"). If during the course of litigation "a claim is resolved such that there is no longer a 'live' dispute between the parties[,] that claim is moot, and the Court cannot exercise jurisdiction over the claim." *Abbas v. U.S. Dep't of Homeland Security*, Civ. Action No. 20-cv-03192, 2021 WL 3856625, at *1 (D.D.C. Aug. 29, 2021). A claim will be rendered moot where events occur "that make[] it impossible for the court to grant any effectual relief whatever to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). "[T]he availability of a partial remedy," however, is sufficient to prevent a claim from being dismissed as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996).

Here, I agree with the parties' candid representations regarding mootness. As plaintiff concedes, all of its non-document-related claims have been rendered moot by the fact that the alleged "Clemency Task Force no longer exists." Pl.'s Supp. Br. at 1.

Because the purported committee is no longer operating, there is no relief this Court may provide as to its alleged failure to file a charter or its failure to provide public notice and access to its meetings. *See Church of Scientology*, 506 U.S. at 12.   Accordingly, I will dismiss as moot Counts I and II in their entirety and Counts IV and V, to the extent those Counts are based on alleged violations of FACA's charter and public access provisions, *see* 5 U.S.C. app. 2 §§ 9(c), 10(a).

I will also dismiss the claims against Jared Kushner in his official capacity as Director of the White House Office of American Innovation.  Mr. Kushner no longer holds the official position in which he was originally sued.  Order on Supp. Br. [Dkt. #20] at 2.  Under the normal operation of Federal Rule of Civil Procedure 25(d), a federal officer's successor would be automatically substituted as a defendant, but here it is undisputed that OAI is no longer active under the Biden Administration.  *See* Defs.' Supp. Br. at 3 n.2.  In such situations, the claims against the official are generally no longer justiciable. *See Laudes Corp. v. United States*, 84 Fed. Cl. 298, 314 (2008); *see also Skolnick v. Parsons*, 397 F.2d 523, 525–26 (7th Cir. 1968) (holding district court lacked jurisdiction to consider claim against Presidential Commission and one of its members where Commission no longer existed and no successors to the Commission's members had been appointed).

Plaintiff is correct, however, that its document-related claims are not moot.  As defendants concede, case law in our Circuit supports the position that document-related claims under 5 U.S.C. app. 2 § 10(b) may survive the termination of an advisory committee. *See Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999); *Byrd v. EPA*, 174

F.3d 239, 243–44 (D.C. Cir. 1999); *see also* Defs.' Supp. Br. at 4.  Such claims remain

remediable through the potential production of documents allegedly withheld, thus

maintaining a live controversy subject to judicial resolution.  *See Jud. Watch, Inc. v. Nat'l*

*Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 30 (D.D.C. 2002).  Accordingly, I still must

resolve defendants' motion to dismiss with respect to the remaining claims—Count III in

its entirety and Counts IV and V to the extent those Counts relate to alleged violations of

5 U.S.C. app. 2 §10(b).

### B.  Plaintiff's Document Disclosure Claims

Plaintiff's document disclosure claims stem from its allegation that the purported

Clemency Task Force violated FACA's document production requirement, 5 U.S.C. app.

2 § 10(b).  Under that provision, advisory committees subject to the statute must produce

"the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies,

agenda, or other documents which were made available to or prepared for or by" the

committee.[5]   Plaintiff argues that whether it proceeds under FACA (Count III), the APA

(Count IV), or a mandamus theory (Count V), it is entitled "to enforce FACA" and gain

access to records prepared by or made available to members of the alleged committee.

Pl.'s Opp'n at 5–6; *see also* Compl. ¶ 91, Prayer for Relief at (E).  Defendants counter

that plaintiff (1) fails to state a claim directly under FACA because the statute does not

provide a private right of action, (2) fails to state a claim under the APA because none of

---

[5] This document production requirement is subject to the terms of 5 U.S.C. § 552.  *See* 5 U.S.C. app. 2 §
10(b).

defendants are agencies subject its provisions, and (3) cannot succeed under a mandamus theory because plaintiff has not adequately pled the existence of a committee subject to FACA. *See* Defs.' Mot. at 10–31. Unfortunately for plaintiff, I agree with defendants that plaintiff cannot state a claim under FACA or the APA and has not adequately pled this Court's jurisdiction under a mandamus theory. How so?

### 1. FACA

Plaintiff first seeks relief directly under FACA. In recent years, the majority of courts in our Circuit have held that FACA lacks a private right of action. *See, e.g., Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 220–21 (D.D.C. 2017); *see also Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32–33 (D.D.C. 2011); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010). As the Supreme Court has instructed, when analyzing whether a statute provides a private right of action "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Without the latter, "a cause of action does not exist and courts may not create one." *Id.*

In examining the statutory text, *see* 5 U.S.C. app. 2 §§ 1–16, I have little difficulty joining the consensus in our Circuit and holding that no private right of action exists under the statute. Simply put, "nothing in the language of FACA evidences any intent to create [a private] remedy." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 33 (D.D.C. 2002). Without such a remedy, there can be no private right of action and plaintiff's claim cannot proceed. *Sandoval*, 532 U.S. at 286.

Plaintiff points to a single case going against the weight of authority in this Circuit and argues that "[i]n the absence of controlling legal authority," the Court should permit plaintiff's claim directly under FACA.  *See* Pl.'s Opp'n at 6 (citing *Arms Control & Non-Proliferation v. Lago*, Civ. Action No. 05-682, 2006 WL 3328257 (D.D.C. Nov. 15, 2006) (Collyer, J.)).  Even in *Lago*, however, the court recognized that "FACA does not contain a provision providing a private right of action to enforce its provisions," and, in any event, the court in that case dismissed plaintiff's claims on other grounds. *Lago*, 2006 WL 3328257, at *8.  Accordingly, *Lago* fails to present any justification for permitting plaintiff's FACA claim to proceed.

### 2.  APA

Next plaintiff relies on the APA.  Because the APA only applies to "agencies," 5 U.S.C. §§ 551 *et seq.*, this requires the Court to assess whether defendants constitute agencies subject to the statute's provisions. Under the APA, "agency" is defined, with certain exceptions not relevant here, as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." *Id*. § 551(1).

Plaintiff brings its Complaint against three entities—the Executive Office of the President, Joseph R. Biden, Jr. in his official capacity as President of the United States, and Jared Kushner in his official capacity as Director of OAI.  Under well settled law, the President is not an agency under the APA and "his actions are not subject to its requirements." *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992).  Similarly, our Circuit has rejected the claim that the Executive Office of the President, as such, is an agency under the APA. *United States v. Espy*, 145 F.3d 1369, 1373 (D.C. Cir. 1998)

("[I]t has never been thought that the whole Executive Office of the President could be considered a discrete agency.").[6]

Thus, in order for plaintiff to proceed on its APA claim, the sole remaining defendant—Jared Kushner in his official capacity as Director of OAI—must be an agency subject to the statute. But, as already discussed, the claims against this defendant are moot.[7] Accordingly, without any defendant subject to the statute's provisions, plaintiff's APA claims must fail.

### 3. Mandamus and Venue Act

Lastly, plaintiff invokes this Court's mandamus jurisdiction. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Mandamus constitutes "a drastic and extraordinary remedy reserved for really extraordinary causes." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 944 F.3d 945, 949 (D.C. Cir. 2019). Such relief

---

[6] *Espy* held that the Executive Office of the President was not an agency under FOIA. Its holding is equally applicable to the APA because, as courts in this district have noted, FOIA incorporates and expands on the APA's definition of agency. *See Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*, No. 19-cv-02906, 2020 WL 2838568, at *4–5 (D.D.C. June 1, 2020) ("All APA agencies are FOIA agencies."). Therefore, if the Executive Office of the President is not an agency for FOIA purposes, it cannot meet the definition of an agency under the APA.

[7] Even in the event the claims against the Director of the Office of American Innovation are not moot, those claims would still not be cognizable under the APA. It is undisputed here that OAI, when operational, was situated within the White House Office. Such entities are generally not agencies under FOIA or the APA. *Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61, 66 (D.D.C. 2019) (citing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 158 (1980). Moreover, even if this Court were to apply the D.C. Circuit's test for determining which subcomponents of the Executive Office of the President constitute agencies subject to the APA, *see Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971), OAI would still fall short because it fails to wield sufficient authority independently of the President to constitute an agency. *See Democracy Forward Found.*, 356 F. Supp. 3d at 66–73. For these independent reasons, plaintiff cannot proceed on its APA claims.

is "hardly ever granted" and the Court's jurisdiction to provide such relief is "strictly confined." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). To succeed, plaintiff must show "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate remedy exists." *Dunlap*, 944 F.3d at 949. The party seeking the issuance of the writ bears the burden of establishing that its right to relief is clear and indisputable. *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002).

Plaintiff here fails to carry this burden as it has not adequately pled the existence of an advisory committee subject to FACA. The Complaint has three central deficiencies: it fails to plausibly allege the committee provided collective recommendations, fails to allege the existence of non-federal employee members with a vote or veto over committee recommendations, and fails to plausibly allege the committee possessed the requisite form and structure. Taken together, these shortcomings preclude plaintiff from establishing a clear and indisputable right to relief.

### i. *Collective Advice*

A group is only an advisory committee subject to FACA where it renders "advice or recommendations, *as a group*, and not as a collection of individuals." *AAPS*, 997 F. 2d at 913. In an attempt to satisfy this requirement, plaintiff alleges on "information and belief . . . [that] the Clemency Task Force provided collective advice and recommendations." Compl. ¶ 64; *id*. ¶ 83 (alleging the Clemency Task Force prepared "group recommendations to submit to the President"). Plaintiff's only support for this characterization is a White House press release, which it argues "reveals that . . . the

members of the Clemency Task Force have *worked together* to advise the president."
Compl. ¶¶ 68–69 (emphasis added).

This press release, however, undermines, rather than promotes, the plausibility of plaintiff's claims. *See* Press Release, The White House, *Statement from the Press Secretary Regarding Executive Grants of Clemency*, Feb. 18, 2020, https://trumpwhitehouse.archives.gov/briefings-statements/statement-press-secretary-regarding-executive-grants-clemency-2/. The release does not mention any clemency group working on or recommending any of the pardons at issue. *Id.* Instead, it deals almost entirely in individuals, listing notably varied and dissimilar sets of individuals as supporting each act of clemency. *Id.* These seemingly ad hoc recommendations undermine plaintiff's argument that the Clemency Task Force worked as a group to provide collective advice. *See Freedom Watch, Inc. v. Obama*, 930 F. Supp. 2d 98, 102 (D.D.C. 2013) (an "alleged committee does not fall within the scope of FACA" where "individuals attending . . . meetings varied significantly").

While some of the alleged Clemency Task Force members are listed in the press release, few are listed as supporting the same act of clemency, and *none* of the announced actions draw the support of all, or even most, of the alleged members of the Task Force. *Id.* In fact, several of the alleged committee members, including the purported committee's leader, Jared Kushner, are omitted from the press release entirely. *Id.* This is hardly the recognition one would expect from a White House that was purportedly accepting the collective advice of a formally organized group.

Far from supporting plaintiff's allegations, the press release shows the opposite to

be true—that each act of clemency was supported by dissimilar *ad hoc* groups of
unassociated individuals—the precise groups over which FACA does not apply. *AAPS*,
997 F.2d at 915 (FACA not implicated by an "unstructured arrangement in which the
government seeks advice from what is only a collection of individuals who do not
significantly interact with each other); *Citizens for Responsibility and Ethics in
Washington v. Leavitt*, 577 F. Supp. 2d 427, 431–33 (D.D.C. 2008) (holding no FACA
committee existed where meeting attendees providing individual, as opposed to
collective, advice).  Accordingly, plaintiff's allegations fail to plausibly implicate FACA.
*Twombly*, 550 U.S. at 555 ("A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the defendant is
liable").

  Our Circuit Court's decision in *VoteVets* does not dictate a different result.  Unlike
the Presidential announcement in that case, which specifically referenced the creation of
a committee and named specific members, including its leader, *VoteVets*, 992 F.3d at
1104, the press release plaintiff relies on is silent with respect to any purported committee
or group.  Moreover, in *VoteVets*, the complaint alleged that the purported committee
members referred to themselves as a "group" and a "team," and that this viewpoint was
shared by those in the federal agency with which the purported committee worked.  *Id.*
Plaintiffs there also detailed how members of the committee worked together to consult
with each other, kept each other apprised of events that others missed, and offered their
recommendations jointly, *id*. at 1105—detailed allegations indicating collaboration and
the provision of collective advice that are conspicuously absent here.

    *ii.  Membership*

The Complaint is equally deficient for failing to adequately allege committee

membership.  Under FACA, committees comprised entirely of federal employees are

exempt from the statute's requirements.  5 U.S.C. app. 2 § 3(2).  For a non-federal

employee to be a member of a committee, that individual must possess a "vote or veto in

committee recommendations or decisions."  *Food & Water Watch v. Trump*, 357 F. Supp.

3d 1, 12 (D.D.C. 2018) (quoting *In re Cheney*, 406 F.3d at 728).  Mere "participation in

committee meetings," even if it is "influential participation," is not enough to transform a

private attendee into a "member."  *In re Cheney*, 406 F.3d at 728.  As our Circuit Court

has held, the "severe separation-of-powers problems" that result from applying FACA to

committees advising the Executive Office of the President mandate this strict

interpretation.  *In re Cheney*, 406 F.3d at 728 ("In making decisions on personnel and

policy, and in formulating legislative proposals, the President must be free to seek

confidential information from many sources, both inside the government and outside.").

Plaintiff alleges that certain individuals from outside the government were

members of the Clemency Task Force, Compl. ¶¶ 39–59, but makes no supporting factual

allegations with respect to the nature of the alleged membership, including if and how

members engaged with the committee and whether they possessed a vote or veto over

committee recommendations.  *See generally* Compl.  Without some indication that such a

structure exists within the group, plaintiffs have failed to plausibly allege a committee

subject to FACA and the Court must dismiss the action.  *Food & Water Watch*, 357 F.

Supp. 3d at 12; *see also In re Cheney*, 406 F.3d at 728.

iii.  *Form and Structure*

Finally, plaintiff fails to allege a sufficient form and structure.  FACA does not apply to "every formal and informal consultation between the President or an Executive agency and a group rendering advice."  *Pub. Citizen*, 491 U.S. at 453.  Instead, FACA is only implicated where a purported committee has "in large measure, an organized structure, a fixed membership, and a specific purpose."  *AAPS*, 997 F.2d at 914 (rejecting a reading of the statute that would apply FACA to "every instance when the President (or an agency) informally seeks advice from two or more private citizens").  Because form is critical, "the government has a good deal of control over whether a group constitutes a FACA advisory committee" and "it is a rare case when a court holds that a particular group is a FACA advisory committee over the objection of the executive branch."  *Id.*

Plaintiff's allegations regarding the Clemency Task Force's form and structure are threadbare, to say the least.  The Complaint states only that the group was formed in 2019, met on an indeterminate number of occasions, reviewed applications for clemency, and provided recommendations regarding particular pardon applications and the clemency process generally to either the President or Jared Kushner, the group's alleged leader.  *See* Compl. ¶¶ 39–64, 81.  Even taken as true, these generalized assertions fail to plausibly allege a committee subject to FACA.  *See Citizens for Responsibility and Ethics in Washington*, 577 F. Supp. 2d at 432 (FACA not implicated where group had no formal structure, there was no clear overlap in attendance between meetings, and no collaborative work product was created).

Nor does plaintiff offer supporting details regarding the committee's operations,

structure, membership and attendance, or other characteristics from which the Court

could draw reasonable inferences in its favor. *See Twombly*, 550 U.S. at 555 (holding a

complaint must contain "more than labels and conclusions" and that "a formulaic

recitation of the elements of a cause of action will not do"). Instead, plaintiff relies on

the fact that public reporting—namely the *Washington Post* article—allegedly supports

its theory. Compl. ¶ 58; Pl.'s Opp'n at 21–22 n.6 (asserting that the article "discloses a

structured process for submission of clemency applications in connection with the Task

Force").

　　Unfortunately for plaintiff, this too falls short. Far from supporting the allegations

in the Complaint, the article describes the alleged Clemency Task Force as an "*informal*

network of advocates providing clemency recommendations" to the President. Ex. 2 to

Defs.' Mot. (emphasis added). The article generally asserts that the group held meetings,

but it offers no details on how the supposed committee functioned and ultimately

concludes that it is "not clear how the people in Trump's informal network will select

people to recommend for clemency" going forward. *Id*. Not exactly an example of old-

fashioned reporting!

　　To say the least, such allegations do not make out an advisory committee subject

to FACA, and the Complaint's refashioning of the article into a legal document does not

alter that conclusion. To hold otherwise would permit almost any reporting of the

President seeking advice from private individuals to serve as the basis for seeking

discovery from the Executive Branch. Such an interpretation of FACA would not only

raise serious separation-of-powers concerns, *see in re Cheney*, 406 F.3d at 727, but has

already been squarely rejected by our Circuit Court.  *AAPS*, 997 F.2d at 915.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is GRANTED and the action is DISMISSED in its entirety.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge